1    STEVEN G. SKLAVER (237612)
2    ssklaver@susmangodfrey.com
     DAVIDA BROOK (275370)
3    dbrook@susmangodfrey.com
4    RAVI DOSHI (279851)
     rdoshi@susmangodfrey.com
5    SUSMAN GODFREY L.L.P.
6    1901 Avenue of the Stars, Suite 950
     Los Angeles, California 90067
7    Telephone:  (310) 789-3100
8    Facsimile:   (310) 789-3150

9    BROOKE TAYLOR (*pro hac vice* to be submitted)
10   btaylor@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
11   1201 Third Avenue, Suite 3800
12   Seattle, Washington 98101
     Telephone:  (206) 373-7380
13   Facsimile:   (206) 516-3883

14
15   Attorneys for Defendant Zillow, Inc.

16                  **UNITED STATES DISTRICT COURT**

17                  **CENTRAL DISTRICT OF CALIFORNIA**

18
19                       **SOUTHERN DIVISION**

20   RACHEL KREMER,                    | Case No. CV 14-01889-DOC (DFMx)
21              Plaintiff,             | Hon. David O. Carter
22
23   v.                               | **MEMORANDUM OF POINTS &**
                                       | **AUTHORITIES IN SUPPORT OF**
24                                     | **DEFENDANT ZILLOW'S MOTION**
     ZILLOW, INC.; and DOES 1-50,     | **TO DISMISS PLAINTIFF'S**
25   inclusive,                        | **COMPLAINT PURSUANT TO**
                                       | **RULE 12(B)(6)**
26              Defendants.            |
                                       | Date:  January 12, 2015
27                                     | Time:  8:30 a.m.
                                       | Place:  Courtroom 9D
28

                       **REDACTED –PUBLIC VERSION**
     3464824v1/014495

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................ 1

II.     LEGAL STANDARD .................................................... 3

        A.      12(b)(6) Motion to Dismiss. .................................... 3

        B.      Incorporation by Reference of Ms. Kremer's Text Messages. ............. 3

III.    ALLEGATIONS OF THE COMPLAINT AND THE TEXTS
        INCORPORATED BY REFERENCE ............................................. 6

IV.     ARGUMENT ............................................................... 9

        A.      The Sexual Harassment Claim Fails as a Matter of Law Because
                Ms. Kremer's Available Text Message Threads Make Clear
                That It Cannot Reasonably be Alleged that She Found the
                Communications She Now Complains of to be Unwelcome. ............... 9

        B.      The Civil Harassment Claim under California Code of Civil
                Procedure Section 527.6  Fails as a Matter of Law Because the
                Only Remedy Available is an Injunction, Which Ms. Kremer
                Does Not and Cannot Seek. ................................. 11

        C.      The Intentional and Negligent Infliction of Emotional Distress
                Claims Should Be Dismissed Because the Alleged Conduct Was
                Not "Extreme and Outrageous" and Because Ms. Kremer's
                Allegation that She Suffered "Severe Emotional Distress" is
                Conclusory. ...................................... 12

        D.      The Negligent Retention and Supervision Claim Should Be
                Dismissed Because It Is Predicated on Ms. Kremer's
                Contradicted Allegation that She Was Subjected to Sexual
                Harassment and Does Not Adequately Plead that Zillow Knew
                or Should Have Known of the Private Text Messaging of Which
                She Now Complains.......................................... 14

3464824v1/014495

E.  The Retaliation Claim Should be Dismissed Because The Complaint Does Not Allege that Plaintiff Engaged in Any Protected Activity. ..............................................................................15

F.  The Derivative Claim for Wrongful Discharge in Violation of Public Policy Should be Dismissed Because it is Predicated on the Implausible Claims of Harassment and Retaliation.......................17

V.  CONCLUSION ............................................................................................17

3464824v1/014495

TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................3, 13, 15, 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ....................................................................................13

*Brennan v. Townsend & O'Leary Enters.*, Inc.,
199 Cal. App. 4th 1336...................................................................................9

*Butler-Rapp v. Lourdeaux*,
134 Cal. App. 4th 1220 (2005)...............................................................12, 13

*Clegg v. Cult Awareness Network*,
18 F.3d 752 ....................................................................................................3

*Clerkin v. MyLife.com, Inc.*,
Case No. CV 11-0527, 2011 WL 3809912 (N.D. Cal. Aug. 29,
2011).................................................................................................................5

*Delfino v. Agilent Tech., Inc.*,
145 Cal. App. 4th 790 (2006)........................................................................14

*Doe v. Capital Cities*,
50 Cal. App. 4th 1038 (1996).........................................................................14

*EEOC v. Prospect Airport Servs., Inc.*,
621 F.3d 991 (9th Cir. 2010).....................................................................9, 10

*Fletch v. W. Nat'l Life Ins. Co.*,
89 Cal. Rptr. 78 (1970)..................................................................................12

*Foster v. ScentAir Techs.*,
2014 WL 2603995 at *1 (N.D. Cal. June 10, 2014) .......................................11

*Holtzclaw v. Certainteed Corp.*,
795 F. Supp. 2d 996 (E.D. Cal. 2011) ...........................................................17

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009)..............................................................................9, 13

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) ...........................................................................3

*Juarez v. Boy Scouts of Am., Inc.*,
81 Cal. App. 4th 377 (2000).........................................................................14

*Knieval v. ESPN*
393 F.3d 1068 ..................................................................................5, 6, 7, 8

*Lanzarone v. Guardsmark Holdings, Inc.*,
Case No. CV 06-1136, 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) .............12

*Lee v. Eden Med. Ctr.*,
690 F. Supp. 2d 1011 (N.D. Cal. 2010).........................................................12

*Mamou v. Trendwest Resorts, Inc.*,
165 Cal. App. 4th 686 (2008).........................................................................16

*McKenna v. Permanente Med. Grp., Inc.*,

894 F. Supp. 2d 1258 ................................................................. 13

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ............................................................... 4, 9

*Mullis v. United States Bankr. Court*,
828 F.2d 1385 (9th Cir. 1987) ................................................. 3

*Nebel v. Sulak*,
73 Cal. App. 4th 1363 (1999) ................................................ 11

*Noble v. Sears, Roebuck & Co.*,
33 Cal. App. 3d 654 (1973) ................................................... 14

*Pareto v. F.D.I.C.*,
139 F.3d 696 (9th Cir. 1998) ................................................... 3

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ................................................... 4

*Rojo v. Kilger*,
52 Cal. 3d 65 (1990) ............................................................ 17

*Roman Catholic Bishop v. Superior Court*,
42 Cal. App. 4th 1556 ........................................................... 14

*Russell v. Douvan*,
112 Cal. App. 4th 399 (2003) ................................................ 11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ................................................... 3

*Tameny v. Atl. Richfield Co.*,
164 Cal. Rptr. 839 (1980) ..................................................... 17

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ................................................... 4

*Yau v. Santa Margarita Ford, Inc.*,
229 Cal. App. 4th 144 (2014) ................................................ 17

STATUTES

Cal. Civil Code 51.9 ................................................................ 9

Cal. Civil Code 51.9(a)(2) ....................................................... 9

Cal. Civil Proc. Section 527.6(d) ............................................ 11

California Government Code section 12940(h) ...................... 15

RULES

Federal Rule of Civil Procedure 12(b)(6) .............................. 3, 4

OTHER AUTHORITIES

Restatement (Second) of Torts § 563 ...................................... 5

3464824v1/014495

# I.  <u>INTRODUCTION</u>

A plaintiff cannot state a legally cognizable claim for harassment by selectively quoting snippets from multiple years' worth of text messages. Plaintiff Rachel Kremer has, nevertheless, done just that, choosing to quote in her Complaint only a small sliver of a robust, 1600+ message thread between herself and Mr. Gabe Schmidt, the individual whose text messages form the core of her harassment claim. The reason Ms. Kremer omitted including the entire text message thread as an exhibit to her Complaint is obvious: it renders her sexual harassment claim implausible as a matter of law. Ms. Kremer's text messages are embarrassing to cite to and quote – and not just for her. But she has obviously put them all at issue by selectively quoting some, but not all of them, in order to make an inflammatory allegation that she was the victim of "sexual torture." That conclusory allegation is frivolous. The truth is that Ms. Kremer consistently texted Mr. Schmidt about "███," how her desk at work "smells like a ███████████," the quality of her "█████████," problems with her "██████" because men "███████████████████████," "██████████," how someone "let me stick a finger ████████," how Mr. Schmidt had "prob ████ more men than me," the time when she "████████████████████," which ████████████ Mr. Schmidt should purchase for his wife to celebrate their wedding anniversary and that he was a "Jew :)" for purchasing the cheaper one, whether he would stay with his wife "[e]ven if she stops shaving her ████████," that a vegetable juice she drank "[t]astes like shrek's ████," that he should be saving money to buy a "█████████," that the dating application Tinder is "gonna turn me into a ██████," that she likes "a little sugar w/my ████████████," that she "just got hit on by one of the lesbo's from the other floor," and whether Mr. Schmidt's new born child was created by "Milk man ██████" because he had blonde hair.

These communications that Ms. Kremer sought to cherry-pick from and hide in her Complaint make clear that Mr. Schmidt, his wife, and Ms. Kremer were all very close friends who frequently texted this way to one another. In fact, just two days after receiving the text cited by Ms. Kremer in her Complaint, in which Mr. Schmidt forwards a photograph of someone else's genitalia—an image widely available on the internet—Ms. Kremer texted right back the following nursery rhyme which she said was intended for Mr. Schmidt's soon to be born son:



The more complete, unedited, text message threads between Ms. Kremer and Mr. Schmidt that the Complaint only partially quotes from are attached as Exhibits 1-2 to the Declaration of Steven G. Sklaver filed concurrently with this memorandum, and they should be read in their entirety. This more fulsome record that the Complaint incorporates by reference makes clear that Ms. Kremer's harassment claim is fabricated, no matter what conclusory allegation or heated rhetoric is used.

In short, the core allegations of the Complaint are that Ms. Kremer was supposedly harassed by lewd text messages sent to her by Mr. Schmidt over the course of their two year friendship. But those allegations are *contradicted* by Ms. Kremer's own text messages. The 1600+ text message thread – from which the Complaint quotes just a few – makes clear that Ms. Kremer's allegations of sexual

harassment are not legally cognizable and any amendment would be futile. Inflammatory rhetoric, conclusory allegations, and clever pleading tricks cannot erase the detailed, documented, two-year text message history of a plaintiff with her close friend, who, only after Ms. Kremer is fired, is suddenly alleged for the first time to be a harasser. The Complaint should be dismissed with prejudice.

## II.   LEGAL STANDARD

### A.   12(b)(6) Motion to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) requires that a plaintiff's complaint must be dismissed when the allegations contained within it fail to state a claim upon which relief can be granted. In order to survive a 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In evaluating whether that standard has been met, the court must accept as true all material allegations of the complaint, as well as all reasonable inferences to be drawn therefrom. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). It should additionally construe the complaint in the light most favorable to the nonmoving party. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, the court need not accept as true allegations that contradict matters that are properly subject to judicial notice or by exhibit. *See id.* (citing *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987)). Moreover, the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See id.* (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)). Where the plausibility standard cannot be met and the court is satisfied that the deficiencies within the complaint cannot be cured by amendment, dismissal with prejudice is appropriate. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### B.   Incorporation by Reference of Ms. Kremer's Text Messages.

While a court ruling on a 12(b)(6) motion to dismiss may not generally consider material outside the pleadings in its analysis, the "incorporation by reference" doctrine permits consideration on a motion to dismiss the full text of documents referenced in a complaint, even where that entire document has not been attached to the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (internal citations omitted)). The doctrine serves the important purpose of "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds*.

Ms. Kremer's Complaint highlights only certain, carefully selected, fragments of her lengthy text message history with Mr. Schmidt, but fails to attach that complete history as an exhibit. As these text messages form the core of Ms. Kremer's allegation that she was sexually harassed, under the doctrine of incorporation by reference the Court can consider the more complete content and context of these texts, which make clear that the messages received by Ms. Kremer from Mr. Schmidt were nowhere close to being unwelcome—a necessary element of any sexual harassment claim. *See, e.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) ("The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome."). As such, Zillow includes here as Exhibits 1 and 2 the available history of text messages exchanged between Ms. Kremer and Mr. Schmidt from which the Complaint partially quotes.

The Ninth Circuit has expressly held that electronic documents which are specifically referred to in a complaint can be incorporated by reference on a motion to dismiss. In *Knieval v. ESPN*, the plaintiffs alleged a defamation claim but attached to their complaint only the portion of a web page on which the photograph and caption that they alleged to be defamatory could be found. 393 F.3d 1068, 1076–77 (9th Cir. 2005). Because plaintiffs did not include or describe the contents of the surrounding web pages in their complaint, defendants sought to have the surrounding pages considered under the doctrine of incorporation by reference on the motion to dismiss. On appeal, the Ninth Circuit held that the surrounding web pages could be considered on a motion to dismiss. The Court reasoned that while internet pages were not generally printed like other material usually incorporated by reference before the advent of new technology, "[t]he rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material. Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages." *Id.* (incorporating by reference nine web pages surrounding the complained of picture and the website's homepage). *See also Clerkin v. MyLife.com, Inc.*, Case No. CV 11-0527, 2011 WL 3809912, at *1 & n.2 (N.D. Cal. Aug. 29, 2011) (same).

Similarly here, whether a text message considered in isolation can constitute sexual harassment is impossible to determine outside of the context of the entire on-going text message thread. *Knieval*, 393 F.3d at 1076 ("In evaluating the context in which the [defamatory] statement appeared, we must take into account 'all parts of the communication that are ordinarily heard or read with it.' In doing so, we deviate from the general rule that courts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." (citing Restatement (Second) of Torts § 563 cmt. d (1977))). Accordingly, in considering the present motion to dismiss, the

Court should incorporate by reference the available history of the 1600+ text messages between Ms. Kremer and Mr. Schmidt, from which the Complaint strategically quotes only a few.

### III.   ALLEGATIONS OF THE COMPLAINT AND THE TEXTS INCORPORATED BY REFERENCE

Rachel Kremer was hired by Zillow in June 2012 for a position as an Inside Sales Consultant at the company's office in Irvine, California. (Compl. ¶ 1.) She was joined there by Gabe Schmidt, another individual who was also recently hired by Zillow to serve as an Inside Sales Consultant. The pair quickly formed a close, personal friendship that, by any complete account, extended well beyond the walls of the Zillow office.

Evidencing the closeness of their friendship, Ms. Kremer and Mr. Schmidt texted each other several times a day, and nearly every day, for years. (*See generally* Exhs. 1, 2.) Their texts described everything from routine coordination between coworkers looking to take their smoke and meal breaks together, (*see* Exh. 1 at Aug. 28, 2013), to mutual requests for gossip, not unlike those between childhood friends, (*id.* at July 12, 2013; *id.* at July 16, 2013). The pair shared login information for a single HBO Go streaming account, (*id.* at Oct. 7, 2013), and regularly invited the other over to hang out by the pool or share some wine, (*id.* at Sept. 21, 2013; *id.* at Oct. 5, 2013). When Ms. Kremer found what she described to be the "world's most amazing sandwich place," she texted Mr. Schmidt to let him know she would take him there for lunch sometime. (*Id.* July 9, 2013.) When she received notice that she would have to vacate her apartment in five days, Mr. Schmidt offered to let her sleep on an Aero bed at his and his wife's apartment, or otherwise to help her move. (*Id.* July 25, 2013.) Then, when Ms. Kremer began contemplating moving to Ohio, the pair exchanged heartfelt messages about how much they would miss each other. (*Id.* at Sept. 23, 2013; *id.* at Oct. 13, 2013.)

Such exchanges exemplify the nearly two years' worth of text messages sent between Ms. Kremer and Mr. Schmidt. They continued through high and low points of life, beyond the day Mr. Schmidt was promoted from being Ms. Kremer's co-employee to a manager position (though not Ms. Kremer's manager) at Zillow in May 2014, and at least up to the day Ms. Kremer was terminated for failure to meet her sales goals in August 2014—a decision in which Mr. Schmidt played no part, (*see* Compl. ¶ 17). Indeed, just a month before she was released from her employment with Zillow, Ms. Kremer and Mr. Schmidt made plans for her to come see his newborn child. (Exh. 2 at July 23, 2014.) And the Saturday before her termination, Ms. Kremer texted Mr. Schmidt to let him know that "there is a chili cook off and booze fair tomorrow at high times" and to ask him whether he wanted to "bring the bros and meet us tomorrow?" (*Id.* Aug. 23, 2014.)

Ms. Kremer's and Mr. Schmidt's messages to each other strayed from the routine to the lewd, but these exchanges were mutual, reciprocal, welcome, and frequently instigated by Ms. Kremer. For example:

- On September 29, 2013, ████████████████████████████████████████████████████████████████████████████████████████████████—Ms. Kremer texted Mr. Schmidt saying "████████████████" (Exh. 1 at Sept. 29, 2013.) She then tells Mr. Schmidt that "████████████████████████████████████████████" (*Id.*) Ms. Kremer sent these text messages the same weekend she alleges Mr. Fagnant cornered her when he was belligerently drunk to tell her, "I want to fuck the shit out of you." (Compl. ¶ 12.)

- On October 13, 2013, after asking Mr. Schmidt about the events of the previous night, Ms. Kremer asked him whether a male co-worker of theirs was in bed with Mr. Schmidt and his wife. (Exh. 1 at Oct. 13, 2013.)

- On November 12, 2013, Ms. Kremer sent Mr. Schmidt a text message stating that she was "[s]eriously starting to wonder what's wrong with my █████████████ ███████████████████████████████████████████████ " (*Id.* at Nov. 12, 2013.)

- On March 17, 2014, Ms. Kremer sent Mr. Schmidt an unprompted text message containing the words "MUST SEE FOR NEW PARENTS" and containing an image of a baby ████████████████████████████ █████████████████ (*Id.* at March 17, 2013.)

- On June 13, 2014, just two days after Mr. Schmidt sent Ms. Kremer one of the complained of texts cited in and attached to the Complaint (*see* Comp. ¶ 10g), Ms. Kremer sent Mr. Schmidt a vulgar poem entitled "███████████ with the message "[a] nursery rhyme for ur son." (Exh. 2 at June 13, 2014.)

- On July 22, 2014, the day after Mr. Schmidt's second child was born, Ms. Kremer texted him to say: "Congrats on the blonde babe . . . Milk man ████████ Not funny???" (*Id.* at July 22, 2014.)

These examples present only a quick snapshot of the content of the text messages exchanged between Ms. Kremer and Mr. Schmidt. (*See, e.g.*, Exh. 1 at Oct. 21, 2013; *id.* at Nov. 5, 2013; *id.* at Jan. 7, 2014.) But as a *complete* reading of the available text message threads shows, they establish a welcome, mutual, and reciprocal banter that permeated the pair's nearly two-year long friendship.

Ms. Kremer, however, makes no mention of these other surrounding text messages in her Complaint. Instead, she strategically selects only a handful of messages, and notably only messages sent by Mr. Schmidt (rather than her responses), from the pair's lengthy text history and then argues that those messages are descriptive of unwelcome sexual conduct forced upon her by a manager. She alleges that as a result of such harassing messages, she suffered severe emotional distress, and now seeks to recover compensatory and punitive damages from

1  Zillow. The cited text history shows otherwise, and establishes that Ms. Kremer's

2  claims should be dismissed with prejudice.

3  **IV.    ARGUMENT**

4      **A.    The Sexual Harassment Claim Fails as a Matter of Law Because**

5          **Ms. Kremer's Available Text Message Threads Make Clear That**

6          **It Cannot Reasonably be Alleged that She Found the**

7          **Communications She Now Complains of to be Unwelcome.**

8          A necessary element of any sexual harassment claim, including Ms.

9  Kremer's claim under California Civil Code section 51.9, is that the defendant's

10  conduct of a sexual nature was "unwelcome" by the plaintiff. *See* Cal. Civil Code

11  51.9(a)(2); *see also Meritor*, 477 U.S. at 68 ("The gravamen of any sexual

12  harassment claim is that the alleged sexual advances were unwelcome."). Whether

13  that element of unwelcomeness is met requires an objective and subjective inquiry

14  into the offensiveness of the complained of conduct. *See Hughes v. Pair*, 46 Cal.

15  4th 1035, 1044 (2009) ("To be actionable, a sexually objectionable environment

16  must be both objectively and subjectively offensive." (internal quotation marks and

17  citation omitted)). Therefore, "a plaintiff who subjectively perceives the workplace

18  as hostile or abusive will not prevail . . . if a reasonable person . . . considering all

19  the circumstances, would not share the same perception." *Id.* The converse is also

20  true—even where a reasonable person might find the environment hostile or

21  abusive, a plaintiff cannot prevail where the evidence shows that she did not find

22  the alleged conduct subjectively offensive. *See Brennan v. Townsend & O'Leary*

23  *Enters., Inc.*, 199 Cal. App. 4th 1336, 1356–57 (2011) (finding no evidence that

24  plaintiff found a manager's questions of a sexual nature towards her to be offensive

25  where the record showed "she used profanity at work and she sent e-mails

26  containing sexual material to coworkers from her computer at work, including two

27  e-mails she wrote, which were unsolicited by . . . any other person in management

28  at the agency"); *see also EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997

(9th Cir. 2010) (holding that because "welcomeness is inherently subjective . . . it does not matter to welcomeness whether other men might have welcomed [the] sexual propositions").

**It cannot reasonably be asserted that Ms. Kremer found the communications she now complains of to be unwelcome**. As reflected in the text exchanges cited in her Complaint, Ms. Kremer regularly wrote Mr. Schmidt about topics including how her desk smelled like a " ███████████," " ████," the quality of ███████," problems with her "████████," how someone " █████████████," which specific ████████ Mr. Schmidt should purchase for his wife as an anniversary present, that a dating application was " ████████████," and that she likes "██████████████████████." (*See* Exh. 1 at Aug. 14, 2013, Oct. 2, 2013, Oct. 5, 2013, Oct. 17, 2013, Oct. 28, 2013, Nov. 12, 2013, Jan. 7, 2014; Exh. 2 at July 10, 2014.) On the same night that Ms. Kremer complains Mr. Fagnant approached her while belligerently drunk and told her that he wanted "to fuck the shit out of [her]," Ms. Kremer texted Mr. Schmidt to say " ████████████████████████" She then continues by saying that " ███ ████████████████████████████████████████████████████████" (*Compare id.* at Sept. 29, 2013 *with* Compl. ¶ 12.) Then, just two days after Mr. Schmidt forwarded Ms. Kremer an image of male genitalia that is widely available on the internet, she sent him a lewd poem entitled " ████████" with the accompanying message: "[a] nursery rhyme for ur son." (*Compare* Exh. 2 at June 13, 2014 with Compl. ¶ 10g.) And still more examples are readily available in the 100+ pages of texts that constitute more than 1600 messages. *See, e.g.,* Ex 1 at Aug. 22, 2013 (Ms. Kremer sending Mr. Schmidt █████████████ ███████; *id.* at Nov. 2, 2013 (Ms. Kremer asking whether Mr. Schmidt was meeting his wife for "████████████"). Taken together, such voluntary messages, exchanged between friends who also happened to be co-workers, hardly

10

describe an individual that was being subjected to <u>unwelcome</u> conduct of a sexual nature. *See also Foster v. ScentAir Techs.*, 2014 WL 2603995 at \*1 (N.D. Cal. June 10, 2014) (granting a motion to dismiss a plaintiff's sexual harassment claim where the facts alleged in the complaint, taken together, could not demonstrate "severe and pervasive" harassment).

**B.**  **The Civil Harassment Claim under California Code of Civil Procedure Section 527.6  Fails as a Matter of Law Because the Only Remedy Available is an Injunction, Which Ms. Kremer Does Not and Cannot Seek.**

California Code of Civil Procedure section 527.6 provides that "[a] person who has suffered harassment . . . may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." Cal. Civ. Proc. Code § 527.6. As the plain text of the statute makes clear, the <u>only</u> remedy available to a plaintiff suing under it is a temporary restraining order and injunction enjoining a defendant from continuing to engage in the alleged harassing conduct, not damages. *See id*; *see also Nebel v. Sulak*, 73 Cal. App. 4th 1363, 1369 (1999) ("Section 527.6 was passed to supplement the existing common law torts of invasion of privacy and intentional infliction of emotional distress by providing quick relief to harassment victims threatened with great or irreparable injury.") (internal citation omitted). But Ms. Kremer does not seek to enjoin any of Zillow's alleged conduct, nor does she allege that any such conduct is continuing against her—she only seeks damages. Such omissions are fatal to her pleadings. *See Russell v. Douvan*, 112 Cal. App. 4th 399, 403 (2003) ("[I]f there is no likelihood of future harm, there is no necessity for an expedited procedure for relief. Indeed, under [California Code of Civil Procedure section 527.6(d)] a court cannot issue an injunction unless it finds by clear and convincing evidence that unlawful harassment exists, not that it existed in the past.") (internal citation and quotation marks omitted).  Nor could Ms. Kremer amend her complaint to seek an injunction – she is a former employee with no

Article III standing to pursue injunctive relief. *Lanzarone v. Guardsmark Holdings, Inc.*, Case No. CV 06-1136, 2006 WL 4393465, at *3 (C.D. Cal. Sept. 7, 2006) ("Plaintiff, a former employee, lacks standing to pursue injunctive relief.")

Ms. Kremer's claim for civil harassment thus fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

C.      **The Intentional and Negligent Infliction of Emotional Distress Claims Should Be Dismissed Because the Alleged Conduct Was Not "Extreme and Outrageous" and Because Ms. Kremer's Allegation that She Suffered "Severe Emotional Distress" is Conclusory.**

To state a claim for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct; (2) intended to cause or done in reckless disregard for causing; (3) severe emotional distress; and (4) actual and proximate causation." *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1021-22 (N.D. Cal. 2010). "The conduct must be so extreme as to 'exceed all bounds of that usually tolerated in a civilized community,' and the distress so severe 'that no reasonable [person] in a civilized society should be expected to endure it.'" *Id.* (quoting *Fletch v. W. Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78 (1970)). The elements for a claim of negligent infliction of emotional distress are the same, but without the intent requirement. *See Butler-Rapp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1226 n.1 (2005).

As an initial matter, Ms. Kremer cannot satisfy the requirement that the conduct to which she was subjected was "extreme and outrageous." The conduct that Ms. Kremer alleges was "extreme and outrageous" such that it caused her to suffer severe emotional distress, is the same conduct that Ms. Kremer complains constitutes sexual harassment. (Compl. ¶¶ 38, 46.) While sexual harassment can, in certain instances, constitute the type of extreme and outrageous conduct necessary to predicate an emotional distress claim, here, as evidenced by the very same text

1  message thread that the Complaint quotes out-of-context, there was no harassment

2  as a matter of law, much less any that is "extreme and outrageous."  For two years,

3  Ms. Kremer herself participated in the same type of conduct she now complains of,

4  and did so of her own accord. (*See, e.g.* Exh. 1 at Oct. 2, 2013; *id.* at Nov. 5, 2013;

5  *id.* at March 17, 2014.) Seen with the documents that Ms. Kremer omitted from, but

6  partially quoted in, the Complaint, the lewd text messages Ms. Kremer sent and

7  received were a part of her genuine friendship with Mr. Schmidt, not a malicious

8  and pervasive attempt at harassment by a co-worker. Not only are such exchanges

9  between friends tolerated by civilized society, they were encouraged and

10  reciprocated by Ms. Kremer herself.

11      Ms. Kremer's causes of action for emotional distress also should be

12  dismissed because the Complaint fails to allege any non-conclusory allegation that

13  Ms. Kremer actually suffered severe emotional distress as a result of the now-

14  complained of conduct. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

15  elements of a cause of action, supported by mere conclusory statements, do not

16  suffice.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The

17  only allegation that Ms. Kremer makes regarding her suffering of emotional distress

18  is a conclusory one that she "suffered severe emotional distress." (Compl. ¶¶ 39,

19  47.) Ms. Kremer does not elaborate on the symptoms or conditions of her distress,

20  and falls far short of even alleging that she can overcome the "high bar" set by the

21  California Supreme Court for showing severe emotional distress. *Hughes*, 46 Cal.

22  4th at 1051 (upholding the grant of summary judgment on a plaintiff's emotional

23  distress claim because "plaintiff's assertions that she has suffered discomfort,

24  worry, anxiety, upset stomach, concern, and agitation as the result of defendant's

25  comments to her . . . do not comprise 'emotional distress of such substantial quality

26  or enduring quality that no reasonable [person] in civilized society should be

27  expected to endure it.'"); *see also McKenna v. Permanente Med. Grp., Inc.*, 894 F.

28  Supp. 2d 1258, 1274–75 (E.D. Cal. 2012) (granting a motion to dismiss a claim of

13

intentional infliction of emotional distress where the complaint made "sweeping references to 'anguish, embarrassment, anxiety, nervousness, humiliation, worry . . . and shame' with no facts to support such symptoms or conditions"); (C.D. Cal. June 2, 2011); *Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 WL 2173786 at \*7 (C.D. Cal. June 2, 2011) (dismissing a plaintiff's emotional distress claim where the only allegation as to either the "quantity or quality" of the emotional distress suffered was that the plaintiff had "suffered emotional distress in the amount of $5,000,000"). Without any such factual elaboration, Ms. Kremer's causes of action for emotional distress should be dismissed.

**D.     The Negligent Retention and Supervision Claim Should Be Dismissed Because It Is Predicated on Ms. Kremer's Contradicted Allegation that She Was Subjected to Sexual Harassment and Does Not Adequately Plead that Zillow Knew or Should Have Known of the Private Text Messaging of Which She Now Complains.**

Under California law, "[a]n employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 815 (2006) (quoting *Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556, 1564–65 (1996)). Liability is imposed where the employer "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.* (quoting *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996)). Similarly, liability for negligent supervision arises where the employer had knowledge that their servant "was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000) (quoting *Noble v. Sears, Roebuck & Co.*, 33 Cal. App. 3d 654, 664 (1973)). The common thread is knowledge of the employer.

As with Ms. Kremer's other claims, her claim for negligent retention and supervision is predicated on her implausible allegation, contradicted by the very

1   text thread from which she quotes, that she was sexually harassed by Mr. Schmidt.

2   Her negligent retention and supervision claim therefore necessarily fails as a matter

3   of law.  The claim also must fail because even if sexual harassment were found to

4   have been adequately and plausibly pleaded in the face of the more complete text

5   message history she depends upon, Ms. Kremer has not adequately alleged that

6   Zillow had any knowledge or should have had any knowledge that Mr. Schmidt—

7   or any other Zillow employee—could not be trusted to act in a manner befitting a

8   professional workplace. How could she when the bulk of her Complaint depends on

9   private text messages sent on her's and Mr. Schmidt's personal cell phones? Ms.

10  Kremer also does not allege that Mr. Schmidt, or any other Zillow employee, had a

11  history of harassing conduct of which Zillow should have known, or that any

12  complaints had been made about Mr. Schmidt such that Zillow should have more

13  closely supervised him. Ms. Kremer merely states, in a non-specific and conclusory

14  fashion, that her "supervisors and colleagues," had "known propensities for

15  unlawful behavior including abuse, harassment, and misconduct towards females

16  with whom they worked." (Compl. ¶ 55.) Indeed, Ms. Kremer does not allege any

17  non-conclusory facts to substantiate that her claim is plausible. Accordingly, her

18  claim of negligent supervision and retention should also be dismissed. *See Iqbal*,

19  556 U.S. at 678.

20      **E.      The Retaliation Claim Should be Dismissed Because The**

21               **Complaint Does Not Allege that Plaintiff Engaged in Any**

22               **Protected Activity.**

23      Ms. Kremer appears to base her claim for retaliation on California

24  Government Code section 12940(h), which forbids an employer from taking an

25  adverse employment action against an employee because they have "opposed any

26  practices forbidden under this part or because the person has filed a complaint,

27  testified, or assisted in any proceeding under this part." Cal. Gov't Code 12940(h).

28  To state a claim for retaliation, Ms. Kremer must allege that she (1) engaged in a

protected activity, (2) that Zillow had retaliatory animus towards her, (3) that Zillow took an adverse action against Ms. Kremer, (4) that there is a causal link between the retaliatory animus and the adverse action, and (5) that resulting damages were caused by the adverse action. *See Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (2008).

As with her other causes of action, Ms. Kremer does not allege in her Complaint, in any non-conclusory manner, that she engaged in any protected activity. Instead, she merely recites, without more, that she opposed the conduct by reporting it and demanding it be stopped. (*See* Compl. ¶ 57.) She provides no allegation that she reported the allegedly harassing conduct to Zillow supervisors or corporate officers, when she reported her apparent discomfort, or that she filed any sort of formal or even informal complaint. Such a bare recitation of legal conclusion is not enough to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

Given the complete picture of facts in this case, the rule that courts should not accept as true a plaintiff's threadbare allegations is especially important here. As described above, for nearly two years, Ms. Kremer and Mr. Schmidt shared a close personal relationship, one that began well before Mr. Schmidt became a manager at Zillow, and which extended at least up to the point Ms. Kremer was terminated. Ms. Kremer's current allegation that she was bothered by her text message exchanges with him and that she opposed them is belied by her own regular, and often unprompted, acts of sending her own lewd messages and images to Mr. Schmidt over the course of their two year friendship. (*See, e.g.* Exh. 1 at Nov. 12, 2013; *id.* at March 17, 2014.) Moreover, it is contradicted by the fact that in the history of nearly two years of messages exchanged between the pair, nowhere does it appear, even implicitly, that the exchanges, or friendship, was unwelcome or subjectively perceived to be offensive. Without such facts, which the text history shows are plainly unavailable, Ms. Kremer cannot adequately allege a claim for retaliation.

1

**F.     The Derivative Claim for Wrongful Discharge in Violation of**
2
**Public Policy Should be Dismissed Because it is Predicated on the**
3
**Implausible Claims of Harassment and Retaliation.**

4
Finally, like her other claims, Ms. Kremer's claim for wrongful discharge in
5
violation of public policy appears to be that as a result of her alleged refusal to
6
"endure sexual harassment, discrimination, and other offensive conduct," she was
7
terminated from her employment with Zillow. For a wrongful discharge claim to be
8
viable, a plaintiff must allege "(1) an employer-employee relationship, (2) the
9
employer terminated the plaintiff's employment, (3) the termination was
10
substantially motivated by a violation of public policy, and (4) the discharge caused
11
the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144
12
(2014); *see also Tameny v. Atl. Richfield Co.*, 164 Cal. Rptr. 839 (1980). Sexual
13
harassment, and the refusal to tolerate or acquiesce to it, can form the fundamental
14
public policy basis of a common law wrongful discharge claim. *See Rojo v. Kilger*,
15
52 Cal. 3d 65, 89 (1990). However, because the more complete text message thread
16
incorporated by reference into the Complaint make clear that she never endured any
17
unwelcome harassment or discrimination, her derivative claim for wrongful
18
discharge likewise fails as matter of law. Similarly, because there is no non-
19
conclusory allegation in her Complaint that she ever reported such conduct,
20
formally or informally, to anyone, the Complaint cannot plausibly support a
21
conclusion that Ms. Kremer's termination was substantially motivated by her
22
reporting of any harassment. *See also Holtzclaw v. Certainteed Corp.*, 795 F. Supp.
23
2d 996, 1022 (E.D. Cal. 2011) ("[W]here a plaintiff's FEHA claim fails, a claim of
24
wrongful discharge in violation of the public policy expressed in FEHA also
25
fails.").

26
**V.     CONCLUSION**

27
For each of the foregoing reasons, the Complaint should be dismissed with
28
prejudice.

17

1

2   Dated:   December 11, 2014              STEVEN G. SKLAVER
                                            DAVIDA BROOK
3                                           RAVI DOSHI
                                            BROOKE TAYLOR *(PHV to be submitted)*
4                                           SUSMAN GODFREY L.L.P.

5

6                                           By:   */s/ Steven G. Sklaver*
                                                  Steven G. Sklaver
7
                                            Attorneys for Defendant Zillow, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3464824v1/014495

18