O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RACHEL KREMER, | Case No.: SACV 14-1889 DOC(DFMx) |
| **Plaintiff,** | |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [12]** |
| vs. | |
| ZILLOW, INC., | |
| **Defendant.** | |

Before the Court is Defendant's Motion to Dismiss (Dkt. 12). Having considered the papers, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

**I.  Background**

**A.  Facts Alleged in Complaint**

This case arises from Plaintiff Rachel Kremer's allegations that her employer Defendant Zillow, Inc. ("Zillow") subjected her to a sexually hostile work environment. Zillow is an online home and real estate marketplace for home buyers, sellers, renters, real estate agents, mortgage professionals, landlords, and property managers. *See* Compl. (Dkt. 1) ¶ 3. Zillow operates the largest real estate and rental advertising networks in the country. *Id.* Ms. Kremer began working at Zillow on June 25, 2012 as an Inside Sales Consultant. *Id.* ¶ 1.

Ms. Kremer alleges that Zillow management "routinely and unapologetically" subjected her to "despicable and inappropriate sexual conduct" throughout her employment. *Id.* ¶ 8. Ms. Kremer's complaint lists nearly a dozen examples of sexual harassment. Most of them involve

sexual text messages and comments by her supervisor Gabe Schmidt and another Zillow employee Cody Fagnant between December 2012 and June 2014. *Id.* ¶¶ 10, 12, 14. The examples include:

- On February 9, 2013, Mr. Schmidt invited Ms. Kremer to join him at a popular Newport Beach restaurant, 3 Thirty 3 Waterfront, texting her, "Call me. Matt is showering. Thinking 333 dinner drink and your smooth vagina." *Id.* ¶ 10(c), Ex. C;

- On February 17, 2013, Mr. Schmidt texted to Ms. Kremer, "Wanna blow me and have sex tonight?" *Id.* ¶ 10(d), Ex. D;

- On June 11, 2014, Mr. Schmidt sent a picture of male genitalia to Ms. Kremer with other lewd commentary. *Id.* ¶ 10(g), Ex. G;

- On July 26, 2013 and again on September 28, 2013, a "belligerently drunk" Mr. Fagnant cornered Ms. Kremer and told her, "I want to fuck the shit out of you." *Id.* ¶ 12.

Ms. Kremer alleges that these types of communications were commonplace at the Zillow office in southern California, which had an "adult frat house" culture. *Id.* ¶ 11.

Ms. Kremer alleges that the sexual harassment she experienced adversely impacted her work performance, causing her to be unable to meet her sales goals in July and August 2014. On August 29, 2014, she was informed that her employment was being terminated for failure to meet her sales goals. She did not receive any warnings nor was she given an opportunity to explain the decline in her work performance, as was the normal practice at Zillow. Another Zillow employee from her hire class was not terminated even though the employee's job performance was nearly identical to Ms. Kremer's. *Id.* ¶ 17.

### B.  Text Messages

In support of its Motion, Defendant submitted a declaration by defense counsel Steven G. Sklaver attaching two exhibits containing over 1,600 text messages exchanged between Mr. Schmidt and Ms. Kremer between June 2013 and August 2014. Sklaver Decl. (Dkts. 13, 29). Some of the text messages highlighted by Defendant in their Motion include:

- On September 29, 2013, the same weekend that Mr. Fagnant allegedly cornered her, Mr. Schmidt emailed Ms. Kremer a photo of her straddling Mr. Fagnant, who appears to be

sleeping. Ms. Kremer responded to Mr. Schmidt, "Omg. I made out w/ Cody!!! And then we gave him drugs" and "It's official. I'm a glutton for punishment . I made out w/ him strictly b/c I knew I shouldn't[.] I also can't stop laughing about how freaked out he must be!" Sklaver Decl. Ex. 1 at 63-64.

- On November 12, 2013, Ms. Kremer texted Mr. Schmidt, "Seriously starting to wonder what's wrong with my va jay jay…They work so hard to get in but avoid me like the plague after" and "I don't think it has teeth…Lol." *Id.* at 106.

- On June 13, 2014, two days after Mr. Schmidt sent her the genitalia picture complained of in the Complaint, Ms. Kremer sent him a vulgar poem entitled "Little Pussy" with the message "[a] nursery rhyme for ur son." Sklaver Decl. Ex. 2 at 17.

### C. Procedural History

This lawsuit was filed on December 1, 2014. *See* Compl. (Dkt. 1). The complaint alleges seven causes of action: (1) sexual harassment in violation of California Civil Code § 51.9; (2) civil harassment in violation of California Civil Code § 527.6; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) negligent retention and supervision; (6) retaliation in violation of California Government Code § 12940(h); and (7) wrongful termination in violation of public policy.

Defendant filed the instant Motion on December 11, 2014 (Dkt. 12). Plaintiff filed an opposition on January 12, 2015 (Dkt. 26) and Defendant a reply on January 19, 2015 (Dkt. 27). Oral argument was held on February 2, 2015 (Dkt. 30).

### II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265,

286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2)  This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## III.   Discussion

### A. Sexual Harassment

To bring a sexual harassment claim under California Civil Code § 51.9, Plaintiff must prove the following elements: (1) plaintiff and defendant have a business, service, or professional relationship; (2) "defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe"; (3) plaintiff is unable to easily terminate the relationship; and (4) plaintiff has suffered harm, including emotional distress. Cal. Civ. Code § 51.9(a). "[T]o be actionable, a sexually objectionable environment must be both objectively and subjectively offensive." *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009). "[T]he existence of a hostile work environment depends upon the totality of the circumstances." *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336, 1347 (2011) (internal quotation marks omitted). "In evaluating the totality of the circumstances to determine the existence of a hostile work environment, the following factors can be considered: (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2)

1  the frequency of the offensive encounters; (3) the total number of days over which all of the

2  offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred."

3  *Id.* (internal quotation marks omitted).

4       Zillow argues that Ms. Kremer's sexual harassment claim fails as a matter of law

5  because, when the 1,600+ text messages are viewed as a whole,[1] they show that Ms. Kremer and

6  Mr. Schmidt were engaged in consensual, voluntary, friendly sexual banter and thus, Ms.

7  Kremer cannot reasonably allege that she found Mr. Schmidt's sexual advances unwelcome.

8  Defendant cites *Brennan v. Townsend & O'Leary Enterprises, Inc.*, where a California appellate

9  court affirmed the trial court's judgment notwithstanding the verdict for defendant in a sexual

10  harassment claim in part because there was insufficient evidence that plaintiff found her

11  supervisor's conversations with her about her sex life unwelcome. In that case, plaintiff testified

12  that she shared personal details about her life with her supervisor and that her supervisor

13  initiated conversations with her out of concern for her. Evidence was presented at trial that

14  plaintiff used profanity at work and that she sent e-mails containing sexual material to

15  coworkers from her work computer, including two e-mails that were unsolicited by any of her

16  managers. The court noted a "conspicuous absence" of evidence that plaintiff found her

17  conversations with her supervisor offensive or unwelcome. 199 Cal. App. 4th at 1357.

18       Ms. Kremer argues that, even if she acquiesced or even participated in some of the text

19  messages, that does not foreclose her sexual harassment claim. In *Nichols v. Azteca Rest.*

---

[1] The parties disagree on whether these text messages (other than the ones quoted in the Complaint) can properly be considered at the motion to dismiss stage. In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents not attached to the pleading if (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim and (2) if no party questions their authenticity. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).  The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. Plaintiff argues that the text messages were not properly authenticated because the exhibits are attached to the declaration of Steven G. Sklaver, one of Defendant's attorneys, who does not have personal knowledge about the text messages. Plaintiff also argues that the incorporation by reference doctrine does not apply because the documents form only a partial basis of the complaint. Because the Court would reach the same result regardless of whether the text messages were incorporated by reference or not, the Court does not address the parties' disagreements and assumes without deciding that the incorporation by reference doctrine does apply.

*Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), the district court found that the verbal abuse of which plaintiff complained was not unwelcome in part because plaintiff engaged in "horseplay" with his alleged harassers. The Ninth Circuit rejected this notion, holding that "the fact that not all of Sanchez's interactions with his harassers were hostile does not mean that none of them was." *Id.* at 873. "As any sensible person would, Sanchez drew a distinction between conduct he perceived to be objectionable, and conduct that was not. He viewed horseplay as 'male bonding' and excluded it from his hostile environment claim; he viewed relentless verbal affronts as sexual harassment, and sought legal recourse for that conduct." *Id.* Defendant attempts to distinguish *Nichols* from the case at bar by arguing that, in *Nichols*, the plaintiff engaged in two distinct types of interactions with his alleged harassers – "horseplay" versus name calling and mockery. This argument is not persuasive, as the case itself does not clearly distinguish "horseplay" from the verbal abuse. The better reading of *Nichols* is that harassment may still be actionable even if some of the victim's interactions with his alleged harassers (of whatever type) are friendly rather than hostile.

Here, the Court is not persuaded that dismissal of Plaintiff's sexual harassment claim is appropriate at the pleadings stage. The fact that Plaintiff sent sexually explicit text messages back to Mr. Schmidt and Mr. Fagnant will likely make it more difficult for her to persuade a jury that the alleged harassment was unwelcome than if she had not sent them. However, at this stage, the Court's only role is to decide whether Plaintiff has adequately alleged a sexual harassment claim. If Defendant's exhibits were not before the Court, the answer would be an easy yes as Ms. Kremer alleges that the messages were "unwelcome" and "disturbing" to her. Compl. ¶ 10. If the Court treated Defendant's exhibits as true (as a court would do under the incorporation by reference doctrine), it is a closer call. Ultimately, however, under *Nichols*, the fact that Ms. Kremer acquiesced or participated in some sexual conversations via text messages with her supervisors does not definitively foreclose an eventual factual finding that she worked in a sexually hostile work environment. This is particularly so because sexual harassment is determined based on the totality of the circumstances and often depends on the parties' credibility and the reasonableness of the parties' behavior, all questions that are best decided by

a jury or a court after a complete record is developed.[2] *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) (noting that the unwelcomeness element often presents "difficult problems of proof and turns largely on credibility determinations committed to the trier of fact").

Accordingly, Zillow's Motion is DENIED as to Ms. Kremer's sexual harassment claim and as to Ms. Kremer's intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful termination claims to the extent that Zillow's arguments regarding those claims are based on its arguments regarding the sexual harassment claim.

## B.  Civil Harassment

Zillow argues that Ms. Kremer's civil harassment claim fails as a matter of law because the only remedy available is an injunction, which she cannot and does not seek. Ms. Kremer did not oppose this argument. Accordingly, Zillow's Motion is GRANTED as unopposed as to the civil harassment claim.

## C.  Intentional and Negligent Infliction of Emotional Distress

The elements of cause of action for intentional infliction of emotional distress (IIED) are: (1) extreme and outrageous conduct by the defendant; (2) intent to cause or reckless disregard of the probability of causing emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Hughes*, 46 Cal. 4th at 1050. The elements for negligent infliction of emotional distress (NIED) are the same as the elements for a traditional tort: (1) duty; (2) breach; (3) causation; and (4) damages (severe emotional distress). *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). A defendant's conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1001 (1993) (internal quotations omitted). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be

---

[2] This conclusion is consistent with *Brennan*, where the court determined that plaintiff could not meet the unwelcomeness element only after the court and jury had heard all of the evidence.

expected to endure it." *Hughes*, 46 Cal. 4th at 1051 (internal quotation marks omitted) (alteration in original) (holding that "discomfort, worry, anxiety, upset stomach, concern, and agitation" did not constitute severe emotional distress).

Zillow argues Ms. Kremer's allegations that she suffered "emotional distress" are too conclusory. Throughout the complaint, Ms. Kremer alleges that she "suffered emotional distress" (sometimes phrased as "severe emotional distress" or "emotional distress and ridicule"). These allegations are a mere restatement of an element of the IIED and NIED claims. Because the *Iqbal/Twombly* standard require more than conclusory allegations, the Court DISMISSES Plaintiff's IIED and NIED claims with leave to amend.

### D. Negligent Retention and Supervision

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. . . . Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790, 815 (2006) (internal quotation marks and citations omitted).

Zillow argues that Ms. Kremer did not adequately plead that Zillow knew or should have known about the private text messaging going on between her and Mr. Schmidt; nor did she allege that Mr. Schmidt or others had a history of harassing conduct. The Complaint alleges that Zillow's male managers frequently engaged in sexual relations with female sales representatives. Mr. Fagnant, for instance, allegedly had sexual relations with a sales representative in Seattle. Compl. ¶ 13. The Complaint alleges that Plaintiff's supervisors and colleagues "had known propensities for unlawful behavior including abuse, harassment, and misconduct towards females with whom they worked" and that their conduct towards Kremer was foreseeable because of the Southern California office's known reputation as an "adult frat house" and because of Zillow's male employees' treatment of other female employees. *Id.* ¶ 54.

The Complaint does not allege specific knowledge of Messrs. Schmidt's and Fagnant's treatment of Kremer, nor does it allege who knew or should have known about Zillow's male employees' behavior generally. Even construing these factual allegations in the light most

favorable to Plaintiff, these allegations do not make out a plausible claim that Zillow knew or should have known that there was a risk that Messrs. Schmidt and Fagnant were sexually harassing female employees such as Ms. Kremer. Accordingly, the Court DISMISSES Plaintiff's negligent retention and supervision claim with leave to amend.

### E. Retaliation

Defendant argues that Ms. Kremer's retaliation claim should be dismissed because her allegations that she engaged in a protected activity are too conclusory. The Complaint alleges that Kremer "opposed the sexual harassment, discrimination, and other offensive conduct as described herein by reporting the conduct, and demanding that it be stopped" and that "Zillow failed to address Plaintiff's complaint." Compl. ¶¶ 57-58. These allegations are not detailed, but under the notice pleading standard, they adequately plead that Kremer engaged in a protected activity. What is missing, however, are factual allegations regarding causation. Without more specifics about when she reported the offensive conduct and to whom, the Court cannot determine whether it is plausible that Zillow terminated Kremer because of her reporting sexual harassment. Accordingly, Plaintiff's retaliation claim is DISMISSED with leave to amend.

### F. Wrongful Termination

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014). Discharging an employee in retaliation for reporting discrimination or discharging an employee who refuses to tolerate sexual harassment can fulfill the "violation of public policy" element. *Rojo v. Kliger*, 52 Cal. 3d 65, 90 (1990).

Because Plaintiff has not adequately alleged retaliation, Plaintiff's wrongful termination claim fails to the extent that it depends on her retaliation claim. The wrongful termination claim survives to the extent that it depends on the sexual harassment claim.

**IV.** **Disposition**

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss as follows:

(1) Defendant's Motion is GRANTED as to Plaintiff's civil harassment, IIED, NIED, negligent retaliation and supervision, and retaliation claims, as well as Plaintiff's wrongful termination claim to the extent that it depends on the retaliation claim. These claims are DISMISSED with leave to amend;

(2) Defendant's Motion is DENIED as to Plaintiff's sexual harassment claim, as well as to Plaintiff's wrongful termination claim to the extent that it depends on the sexual harassment claim;

(3) Plaintiff shall file an amended complaint, if any, on or before **February 17, 2015**.

DATED:       February 3, 2015

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE