1   BROOKE A. M. TAYLOR *(pro hac vice)*
    btaylor@susmangodfrey.com
2   SUSMAN GODFREY L.L.P.
    1201 3rd Avenue, Suite 3800
3   Seattle, WA  98101
    Telephone:  (206) 373-7383
4   Facsimile:  (206) 516-3883

5   STEVEN G. SKLAVER (237612)
    ssklaver@susmangodfrey.com
6   AMANDA BONN (270891)
    abonn@susmangodfrey.com
7   DAVIDA BROOK (275370)
    dbrook@susmangodfrey.com
8   RAVI DOSHI (297851)
    rdoshi@susmangodfrey.com
9   SUSMAN GODFREY L.L.P.
    1901 Avenue of the Stars, Suite 950
10  Los Angeles, CA 90067-6029
    Telephone:  (310) 789-3100
11  Facsimile:  (310) 789-3150

12  Attorneys for Defendant Zillow, Inc.

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16                       **SOUTHERN DIVISION**

17

| | |
|---|---|
| 18  ASHLEY BOEHLER, an individual; JAMES FRIEDRICH, an individual, | SACV 14-01844 DOC (DFMx) |
| 19                     Plaintiffs, | Hon. Douglas F. McCormick |
| v. | **JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| 20  ZILLOW, INC., a Washington corporation; and DOES 1 through 50, inclusive | |
| 22                     Defendants. | Fact Discovery Cut-Off:    Apr. 1, 2016 Final Pretrial Conference:  Sept. 26, 2016 Trial Date:                Oct. 18, 2016 |
| 24 | [These Dates Apply to All Captioned Cases] |
| 25 | [Discovery Document: Referred to Magistrate Judge Douglas F. McCormick] |

27

28

| | | |
|---|---|---|
| 1 | RACHEL KREMER, an individual, | SACV 14-01889 DOC (DFMx) |
| 2 | Plaintiff, | Hon. Douglas F. McCormick |
| | v. | |
| 3 | ZILLOW, INC., a Washington | **JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| 4 | corporation; and DOES 1 through 50, inclusive | |
| 5 | Defendants. | |
| 6 | | [Discovery Document: Referred to Magistrate Judge Douglas F. McCormick] |
| 7 | | |
| 8 | JENNIFER YOUNG, an individual; | SACV 14-01922 DOC (DFMx) |
| 9 | Plaintiff, | Hon. Douglas F. McCormick |
| | v. | |
| 10 | ZILLOW, INC., a Washington | **JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| 11 | corporation; and DOES 1 through 50, inclusive | |
| 12 | Defendants. | [Discovery Document: Referred to Magistrate Judge Douglas F. McCormick] |
| 13 | | |
| 14 | STEPHEN JOHNSON, an individual; REGINALD PETERSON, an | SACV 14-01991 DOC (DFMx) |
| 15 | individual; RYAN SEDA, an individual; JASON YOUSEPH, an | Hon. Douglas F. McCormick |
| 16 | individual; and MICHAEL KERR, an individual, | **JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| 17 | Plaintiffs, | |
| 18 | v. | [Discovery Document: Referred to Magistrate Judge Douglas F. McCormick] |
| 19 | ZILLOW, INC., a Washington corporation; and DOES 1 through 50, | |
| 20 | inclusive | |
| 21 | Defendants. | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

# TABLE OF CONTENTS

I.    DEFENDANT'S INTRODUCTORY STATEMENT ................................................. 1

II.   PLAINTIFFS' INTRODUCTORY STATEMENT.................................................... 4

   A.   Plaintiffs' Inadequate Search for Responsive Documents. ...................... 5

      1.   Defendant's Argument and Proposed Resolution. .......................... 5

      2.   Plaintiffs' Argument and Proposed Resolution. ............................ 10

   B.   Plaintiffs' Failure to Produce Damages Documents. .............................. 11

      1.   Defendant's Damages-Related Document Requests. ...................... 11

         REQUEST FOR PRODUCTION NO. 3 [KREMER]:.................... 11

         REQUEST FOR PRODUCTION NO. 3 [YOUNG]: ...................... 11

         REQUEST FOR PRODUCTION NO. 3 [JOHNSON, KERR,
         PETERSON, SEDA, YOUSEPH]: .......................................... 12

      2.   Defendant's Argument and Proposed Resolution. .......................... 12

      3.   Plaintiffs' Argument and Proposed Resolution. ............................. 14

   C.   Plaintiffs' Failure to Produce Text Message and Social Media
        Documents. ....................................................................................... 15

      1.   Defendant's Texting and Social Media Document Requests. .......... 15

         a.   Kremer v. Zillow ............................................................. 16

            REQUEST FOR PRODUCTION NO. 2: ............................... 16

            REQUEST FOR PRODUCTION NO. 17: ............................. 16

            REQUEST FOR PRODUCTION NO. 18: ............................. 17

            REQUEST FOR PRODUCTION NO. 19: ............................. 17

            REQUEST FOR PRODUCTION NO. 33: ............................. 18

            REQUEST FOR PRODUCTION NO. 37: ............................. 18

         b.   Young v. Zillow ............................................................... 19

            REQUEST FOR PRODUCTION NO. 2: ............................... 19

            REQUEST FOR PRODUCTION NO. 28: ............................. 19

            REQUEST FOR PRODUCTION NO. 30: ............................. 20

4060607v1/014549

REQUEST FOR PRODUCTION NO. 41:...............................21

REQUEST FOR PRODUCTION NO. 45:...............................21

    c.   *Johnson, et. al. v. Zillow*..................................................22

REQUEST FOR PRODUCTION NO. 4 [JOHNSON]:............22

REQUEST FOR PRODUCTION NO. 15 [JOHNSON]:..........22

REQUEST FOR PRODUCTION NO. 4 [SEDA]: ..................23

REQUEST FOR PRODUCTION NO. 19 [SEDA]: ................24

REQUEST FOR PRODUCTION NO. 4 [KERR]: ..................24

REQUEST FOR PRODUCTION NO. 13 [KERR]: ................25

REQUEST FOR PRODUCTION NO. 4 [PETERSON]:..........25

REQUEST FOR PRODUCTION NO. 15 [PETERSON]:........26

REQUEST FOR PRODUCTION NO. 4 [YOUSEPH]: ..........26

REQUEST FOR PRODUCTION NO. 17 [YOUSEPH]: .........27

    d.   *Boehler, et. al. v. Zillow.* ...........................................28

REQUEST FOR PRODUCTION NO. 2 [BOEHLER]: ..........28

REQUEST FOR PRODUCTION NO. 8 [BOEHLER]: ..........28

REQUEST FOR PRODUCTION NO. 11 [BOEHLER]: .........29

REQUEST FOR PRODUCTION NO. 12 [BOEHLER]: .........30

REQUEST FOR PRODUCTION NO. 23 [BOEHLER]: .........30

REQUEST FOR PRODUCTION NO. 25 [BOEHLER]: .........31

REQUEST FOR PRODUCTION NO. 2 [FRIEDRICH]:.........31

REQUEST FOR PRODUCTION NO. 3 [FRIEDRICH]:.........31

REQUEST FOR PRODUCTION NO. 8 [FRIEDRICH]:.........32

REQUEST FOR PRODUCTION NO. 9 [FRIEDRICH]:.........33

2.   Defendant's Argument and Proposed Resolution. ..........................33

    a.   Rachel Kremer.........................................................37

    b.   Jennifer Young. ......................................................39

    c.   The *Johnson* Plaintiffs...........................................42

        d.    Ashley Boehler.................................................................44

   3.   Plaintiffs' Argument and Proposed Resolution..............................45

III.  INDIVIDUAL ISSUES IN DISPUTE.............................................................45

   A.  *Young v. Zillow*..............................................................................45

      1.   Young's Alleged Car Accident.......................................45

           REQUEST FOR PRODUCTION NO. 12: ...................................45

           REQUEST FOR PRODUCTION NO. 38: ...................................46

          a.   Defendant's Argument and Proposed Resolution.....................46

          b.   Plaintiff's Argument and Proposed Resolution. .....................47

      2.   Young's Post-Zillow Employment...........................................47

           REQUEST FOR PRODUCTION NO. 43: ...................................47

          a.   Defendant's Argument and Proposed Resolution.....................47

          b.   Plaintiff's Argument and Proposed Resolution: .....................48

      3.   Young's Other Lawsuits. ................................................48

           REQUEST FOR PRODUCTION NO. 37: ...................................48

          a.   Defendant's Argument and Proposed Resolution.....................49

          b.   Plaintiff's Argument and Proposed Resolution. .....................49

      4.   Young's Travel Outside of California. ...................................50

           REQUEST FOR PRODUCTION NO. 46: ...................................50

          a.   Defendant's Argument and Proposed Resolution.....................50

          b.   Plaintiff's Argument and Proposed Resolution. .....................51

      5.   Young's Medical Treatment Documents.....................................51

           REQUEST FOR PRODUCTION NO. 34: ...................................51

           REQUEST FOR PRODUCTION NO. 35: ...................................51

           REQUEST FOR PRODUCTION NO. 36: ...................................51

          a.   Defendant's Arguments and Proposed Resolution. ...................52

          b.   Plaintiffs' Argument and Proposed Resolution. .....................53

      6.   Young's Employment Documents. .................................................53

REQUEST FOR PRODUCTION NO. 43: .....................................53

    a.   Defendant's Request(s) and Plaintiff's Response(s)...............53

    b.   Plaintiff's Argument and Proposed Resolution. ......................54

   7.   Young's Improper Privacy Objections. ...........................................54

INTERROGATORY NO. 1: ....................................................54

INTERROGATORY NO. 7: ....................................................57

    a.   Defendant's Argument and Proposed Resolution. ...................60

    b.   Plaintiff's Argument and Proposed Resolution. ......................61

B.   *Kremer v. Zillow.* .........................................................................61

   1.   Kremer's and Her Agents' Communications with the Media.........61

REQUEST FOR PRODUCTION NO. 36: .....................................61

    a.   Defendant's Argument and Proposed Resolution. ...................61

    b.   Plaintiff's Argument and Proposed Resolution. ......................62

   2.   Kremer's Improper "Possession" Objection. ................................62

REQUEST FOR PRODUCTION NO. 29: .....................................62

REQUEST FOR PRODUCTION NO. 30: .....................................62

REQUEST FOR PRODUCTION NO. 34: .....................................63

REQUEST FOR PRODUCTION NO. 35: .....................................63

    a.   Defendant's Argument and Proposed Resolution. ...................63

    b.   Plaintiff's Argument and Proposed Resolution. ......................64

C.   *Johnson v. Zillow* (Johnson, Kerr, Peterson, Seda, & Youseph). ...........64

   1.   Interrogatories Regarding Statute of Limitations. ...........................64

INTERROGATORY NO. 2 [JOHNSON]: ....................................64

INTERROGATORY NO. 2 [PETERSON] ....................................65

INTERROGATORY NO. 1 [SEDA] ...........................................65

    a.   Defendant's Argument and Proposed Resolution. ...................65

    b.   Plaintiffs' Argument and Proposed Resolution. ......................67

   2.   Plaintiffs' Failure to Respond to Damages Interrogatories. ............68

INTERROGATORY NO. 20 [JOHNSON]:................................... 68

INTERROGATORY NO. 16 [KERR]: ........................................ 68

INTERROGATORY NO. 17 [SEDA]:........................................ 69

INTERROGATORY NO. 15 [YOUSEPH]: ................................ 69

    a.   Defendant's Argument and Proposed Resolution.................... 69

    b.   Plaintiffs' Argument and Proposed Resolution. ..................... 71

  3.  Plaintiffs' Improper Incorporation by Reference. ........................... 71

INTERROGATORY NO. 12 [JOHNSON]:................................... 72

INTERROGATORY NO. 7 [KERR]: ........................................ 72

INTERROGATORY NO. 7 [PETERSON]:................................ 73

INTERROGATORY NO. 3 [SEDA]:........................................ 73

INTERROGATORY NO. 13 [YOUSEPH]: ................................ 74

    a.   Defendant's Argument and Proposed Resolution.................... 75

    b.   Plaintiffs' Argument and Proposed Resolution. ..................... 76

D.  *Boehler v. Zillow* (Boehler & Friedrich). ................................ 76

  1.  Boehler's Medical Treatment Documents....................................... 76

INTERROGATORY NO. 9: ....................................... 76

REQUEST FOR PRODUCTION NO. 10: ..................................... 76

REQUEST FOR PRODUCTION NO. 33: ..................................... 76

    a.   Defendant's Argument and Proposed Resolution.................... 77

    b.   Plaintiff's Argument and Proposed Resolution. ..................... 78

  2.  Boehler's Medical Treatment Interrogatories. ............................... 78

INTERROGATORY NO. 10:........................................................... 78

    a.   Defendant's Argument and Proposed Resolution.................... 79

    b.   Plaintiff's Argument and Proposed Resolution. ..................... 79

  3.  Boehler's Improper Legal Opinion Objection................................. 79

INTERROGATORY NO. 11:........................................................... 79

    a.   Defendant's Argument and Proposed Resolution.................... 79

b.   Plaintiff's Argument and Proposed Resolution. ........................ 80

IV.  DEFENDANT'S CONCLUSION ........................................................................... 80

V.  PLAINTIFFS' CONCLUSION ................................................................................. 81

4060607v1/014549

1

## TABLE OF AUTHORITIES

2

<u>**Cases**</u>

3

*Alexander v. Wal-Mart Stores, Inc.*,
2013 WL 427132 (D. Nev. Feb. 1, 2013) ...........................................13

4

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
2014 WL 4961437 (S.D. Cal. Oct. 3, 2014) ......................................67

5

6

*Baker v. Beech Aircraft Corp.*,
96 Cal. App. 3d 321 (Ct. App. 1979)................................................66

7

*Brown v. Bleiberg*,
32 Cal. 3d 426 (1982)...........................................................................66

8

9

*Calove v. Medtronic, Inc.*,
2013 WL 1247666 (C.D. Cal. Mar. 27, 2013)................................65

10

*Deployment Medicine Consultants,Inc. v. Pipes*,
2010 WL 4853814 (2010) ....................................................................15

11

12

*Dornell v. City of San Mateo*,
2013 WL 5443036 ..................................................................................77

13

*E.E.O.C. v. Simply Storage Mgmt., LLC*,
270 F.R.D. 430 (S.D. Ind. 2010) .......................................................36

14

15

*EEOC v. U.S. Bakery*,
2003 WL 23538023 (D. Or. Nov. 20, 2003)...................................66

16

*Endsley v. Travelers Property Cas. Ins. Co.*,
2015 WL 2380657 (E.D. Cal. May 18, 2015)..................................14

17

18

*First v. Kia of El Cajon*,
2010 WL 3245778 (S.D. Cal. Aug. 17, 2010) .................................47

19

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)..........................................................................66

20

21

*Gray v. Faulkner*,
148 F.R.D. 220 (N.D. Ind. 1992) ............................................52, 53, 64

22

*Hill v. Eddie Bauer*,
242 F.R.D. 556 (C.D. Cal. 2007) ...........................................52, 53, 64

23

24

*In re Facebook PPC Ad. Litig.*,
2011 WL 1324516 (N.D. Cal. Apr. 6, 2011) .....................................7

25

*In re Porsche Cars N. Am., Inc.*,
2012 WL 4361430 (S.D. Ohio Sep. 25, 2012)....................................7

26

27

*Logtale, Ltd. v. IKOR, Inc.*,
2013 WL 3967750 (N.D. Cal. July 31, 2013).....................................75

28

4060607v1/014549

*Luck v. University of San Diego*,
   2014 WL 7111950 (S.D. Cal. 2014) ................................................................. 47

*Procaps S.A. v. Patheon Inc.*,
   2014 WL 800468 (S.D. Fla. Feb. 28, 2014) ........................................................ 8

*Prue v. Brady Company/San Diego, Inc.*,
   196 Cal. Rptr. 3d 68 (Ct. App. 2015) ............................................................... 66

*Robinson v. Jones Lang LaSalle Americas, Inc.*,
   2012 WL 3763545 (D. Or. Aug. 29, 2012) ................................................... 3, 36

*Salazar v. Basic*,
   2006 WL 3802094 (D. Ariz. Dec. 22, 2006) ..................................................... 14

*Switch Comm's Grp. v. Ballard*,
   2011 WL 3957434 (D. Nev. Sep. 7, 2011) ........................................................ 70

*Valdez v. Travelers Indem. Co.*,
   2013 WL 3989583 (N.D. Cal. Aug. 2, 2013) ..................................................... 14

*Walden v. United States*,
   31 F. Supp. 2d 1230 (S.D. Cal. 1998) ............................................................... 13

*Webb v. Standard Oil Co.*,
   49 Cal. 2d 509 ................................................................................................... 14

**Statutes**

Cal. Gov. Code § 12965(b) ..................................................................................... 65

Code of Civil Procedure § 2034.210 ............................................................... 11, 51

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(i) ................................................................................. 34

Fed. R. Civ. P. 26(b) .............................................................................................. 77

Fed. R. Civ. P. 26(f)(3)(C) ....................................................................................... 8

Fed. R. Civ. P. 33 ................................................................................................... 79

Fed. R. Civ. P. 33(a)(2) ..................................................................................... 66, 79

Fed. R. Civ. P. 33(b)(3) .......................................................................................... 75

Fed. R. Civ. P. 34(a)(1)(A) ............................................................................... 15, 35

**Other Authorities**

CACI 1600 .............................................................................................................. 49

Handbk. Fed. Civ. Disc. & Disclosure § 9:13 ................................................. 48, 64

## I.  DEFENDANT'S INTRODUCTORY STATEMENT

Plaintiffs are former Zillow inside sales consultants ("ISCs"). Plaintiffs allege that Zillow discriminated, harassed, and/or retaliated against them based on age, disability, race, religion, sex, and/or whistle-blowing activities. Plaintiffs claim that they suffer severe emotional distress, which has purportedly caused them "debilitating depression, insomnia, exhaustion, loneliness, weekly panic attacks, and deteriorating health" (*Boehler*, Dkt. No. 32 ¶ 84), "severe trauma and fears of working with male colleagues in the future" (*Kremer*, Dkt. No. 35 ¶ 68), "debilitating anxiety, depression, and insomnia" (*Young*, Dkt. No. 23 ¶ 85), and "constant lack of sleep, loss of appetite, severe headaches, continuous panic attacks and depression" (*Johnson*, Dkt. No. 21 ¶ 74). Plaintiffs further claim that their experiences at Zillow, which Kremer likens to "sexual torture" (Dkt. No. 25 ¶ 3), and Johnson compares to a "concentration camp" (Dkt. No. 21 ¶ 62), caused all of their suffering, and that they are therefore entitled to more than $152 million in compensatory and emotional distress damages, as well as unspecified punitive damages. (Declaration of Davida Brook ("Brook Decl.") ¶ 22, Exhs. 12–15 (Plaintiffs' Supplemental Initial Disclosures).)[1] Despite their broad damages claims, Plaintiffs have produced almost nothing in the way of responsive documents and have refused to answer critically-important interrogatories. Zillow therefore moves to compel Plaintiffs to conduct an adequate search for responsive documents, produce documents that have wrongfully been withheld, and provide meaningful responses to interrogatories, as set forth below.

Plaintiffs' Inadequate Search for Documents: Plaintiffs' production of documents is woefully inadequate. They have not produced responsive text message and social media postings. They have not produced documents regarding their pre- and post-Zillow earnings and employment. They have produced only limited medical documentation at best. Many Plaintiffs have produced fewer than

---

[1]  Defendant's exhibits are attached to the Declaration of Davida Brook ("Brook Decl."), filed concurrently herewith.

10 emails, and others have produced hardly more than that. Moreover, the few emails Plaintiffs have produced reveal that Plaintiffs themselves apparently selected a limited number of emails and then simply forwarded them to Plaintiffs' counsel. When pressed to explain the procedures they used to generate such deficient document productions, Plaintiffs' counsel at first agreed they would do so, then stated vaguely that they had searched unspecified devices and email accounts using a single search-term "Zillow," then refused to provide any more information or conduct a comprehensive search. Zillow moves to compel Plaintiffs to conduct a reasonably diligent search for responsive documents by having an appropriate vendor (1) search all of Plaintiffs' devices, including computers, tablets, phones, and any others in a forensically sound manner; (2) search all of Plaintiffs' email accounts, text message or messaging apps, and social media accounts (Facebook, LinkedIn, Instagram, Twitter, etc.) in a forensically sound manager; and (3) search for all responsive communications with or about current or former Zillow employees and other documents responsive to Zillow's requests for production.

Plaintiffs' Damages Information: Plaintiffs refuse to produce documents or adequately answer interrogatories regarding their damages, despite the fact that (1) this Court has already overruled their objection to producing damages-related information in connection with their initial disclosures (*see, e.g.*, *Kremer*, Dkt. No. 48 at 4–5), and (2) we are now only a few months away from the close of fact discovery on April 1, 2016. For example, not a single Plaintiff has produced a single document regarding (1) her pre- and post-Zillow earnings and benefits or (2) her efforts to secure employment after leaving Zillow. Documents and interrogatory responses pertaining to damages are relevant and must be produced.

Plaintiffs' Text Messages and Social Media Posts: Plaintiffs refuse to make a complete production of relevant text messages and social media, despite the fact that text messages Plaintiffs exchanged with their former co-workers and managers are the foundation of many of their claims, and despite the fact that many Plaintiffs had an active social media presence. For example, Kremer's harassment claim is

2

rooted in a handful of text messages she claims to have received from Zillow managers, which she attached to her Complaint. (*See, e.g.*, Dkt. No. 35 ¶ 21, Exhs. B–E.) Other Plaintiffs similarly claim that Zillow's alleged misconduct is demonstrated in text messages, including, for example, Boehler, who alleges he received excessive calls, texts, and emails from Zillow while on vacation (*see* Dkt. No. 34 ¶ 42h), and Johnson, who alleges that text messages attached to his Complaint are examples of the "discriminatory culture" Plaintiffs faced at Zillow "on a daily basis" (*see* Dkt. No. 21 ¶ 1, Ex. A). Yet despite having put their text messages at issue, Plaintiffs—without explanation—refuse to produce complete text message threads with individuals they have identified as having information relevant to their claims. Plaintiffs also have produced almost nothing in the way of social media posts, despite the fact that there are clearly relevant postings, as described below. Courts have ordered broad production of such text message and social media communications in employment cases involving claims for emotional distress. *See Robinson v. Jones Lang LaSalle Americas, Inc.*, 2012 WL 3763545, at *1–2 (D. Or. Aug. 29, 2012) (ordering broad production of text messages exchanged with other current or former employees and social media postings over a 4-year period). The same result is warranted here.

<u>Other Individual Issues:</u> There are numerous other problems with Plaintiffs' interrogatory responses and deficient document productions that are outlined in further detail below. Many Plaintiffs have failed to produce relevant documents regarding their emotional distress, medical treatment, communications regarding this lawsuit, and a host of others. Other Plaintiffs have refused to respond to contention interrogatories that go to the heart of their claims. Plaintiffs should be required to correct their deficient document productions and discovery responses.

## II.    PLAINTIFFS' INTRODUCTORY STATEMENT

THE JOHNSON, KERR, PETERSON, SEDA AND YOUSEF PLAINTIFFS HAVE PRODUCED ALL OF THE DOCUMENTS IN THEIR POSSESSION, CUSTODY AND CONTROL AS HAS BEEN REPEATEDLY RELAYED TO COUNSEL FOR ZILLOW.   EACH OF THESE PLAINTIFFS HAVE, IN CONJUNCTION WITH THEIR COUNSEL, SEARCHED FOR EACH OF THE DOCUMENTS REQUESTED AND PRODUCED WHAT THEY HAVE.   AS FOR THE DAMAGES CLAIMS, IT IS PLAINITFFS' CONTENTION THAT THE SPECIFICS REGARDING DAMAGES IS AN ISSUE FOR EXPERT DISCOVERY. PLAINTIFFS HAVE PUT THEIR ESTIMATED DAMAGES INTO THE INITIAL DISCLOSURES AND THAT IS WHAT IS KNOWN AT THIS TIME. THE SPECIFICS REGARDING DAMAGES ARE BEING CALCULATED BY EXPERTS AND WILL BE DISCLOSED DURING EXPERT DISCOVERY.

COMMON ISSUES IN DISPUTE

**A.    Plaintiffs' Inadequate Search for Responsive Documents.**

**1.    Defendant's Argument and Proposed Resolution.**

Plaintiffs' document productions are woefully deficient. At best, each Plaintiff has produced only a handful of emails, a narrow selection of text messages (or none at all), no social media, no pre- and post-Zillow documents regarding earnings and benefits, and limited documents regarding medical treatment and emotional distress (if any). In total, all nine Plaintiffs have produced roughly 681 documents: 63 documents for Boehler, 100 documents for Friedrich, 17 documents for Johnson, 17 documents for Kerr, 169 documents for Kremer, 150 documents for Peterson, 48 documents for Seda, 27 documents for Young, and 90 documents for Youseph. (Brook Decl. ¶ 14.)

Even where Plaintiffs have produced *some* emails, it seems clear that Plaintiffs themselves simply selected the emails they wished to produce and forwarded them to counsel, who then presumably redacted the forwarding message and produced them. For example, in the email excerpted below, Mr. Peterson simply chose an email from his own files and forwarded it to his counsel Mr. Hoesley, who then produced it:



4060607v1/014549

(Brook Decl. ¶ 15, Ex. 8.) In another example, Ms. Kremer apparently did the same thing, although counsel redacted her forwarded message to them this time:



(*Id.*)

Along similar lines, some Plaintiffs produced limited text messages in a format demonstrating that they simply took screen-captures of some number of messages and sent them to counsel (rather than counsel conducting an appropriate, forensically-sound extraction), as shown below:



(Brook Decl. ¶ 17, Ex. 10.)

6

Plaintiffs' deficient document productions, and the troubling appearance that Plaintiffs' counsel simply permitted Plaintiffs themselves to choose what limited documents they believe were relevant and forward them along, prompted Zillow to demand disclosures of Plaintiffs' search procedure. In particular, Zillow asked Plaintiffs' counsel to state (1) which email accounts, devices, and social media accounts have been searched for each Plaintiff, (2) what method was used to collect responsive data (including whether Plaintiffs self-collected), and (3) what search terms and/or date limitations were used. (Brook Decl. ¶ 4, Ex. 1.) At first, Plaintiffs' counsel refused to provide such information, then they reversed course, agreeing to "exchange information regarding the search efforts during the meet-and-confer process, without the need to serve additional discovery requests for such information, as long as the free exchange of such information is mutual." (*Id*.) Contrary to this representation, Plaintiffs have not provided the information requested (namely, which devices, email accounts, and social media accounts have been searched, the method that was used to conduct any searches, and any search terms that were used to search). (Brook Decl. ¶ 6, Ex. 3.) Rather, Plaintiffs simply informed Zillow that they had used a single search term, "Zillow," on some of Plaintiffs' unspecified personal emails and "social media accounts." (*Id*.) Plaintiffs have since refused to provide any additional information regarding their search process and their deficient document production.  (*Id*.)

Courts have held that a party is required to provide "full disclosure" of its "search methodology" in order to "ensure that all relevant information is made available to the litigants such that both parties have mutual knowledge of all relevant facts." *See, e.g.*, *In re Porsche Cars N. Am., Inc.*, 2012 WL 4361430, at *6 (S.D. Ohio Sep. 25, 2012). "[C]ommunication among counsel is crucial to a successful electronic discovery process." *In re Facebook PPC Ad. Litig.*, 2011 WL 1324516, at *1 (N.D. Cal. Apr. 6, 2011) (quotation marks omitted). Indeed, Rule 26(f) requires the parties to confer regarding "issues about disclosure or discovery of electronically stored information, including the form or forms in which it should

7

be produced . . . ." Fed. R. Civ. P. 26(f)(3)(C). The Advisory Committee notes make clear that the parties may be required to "identify the various sources of [discoverable] information within a party's control that should be searched for electronically stored information" and discuss "any issues regarding preservation of discoverable information." 2006 Amend. Adv. Comm. Notes. Plaintiffs' counsel refuse to provide such information here because their search for responsive documents is plainly inadequate.

The decision in *Procaps S.A. v. Patheon Inc.*, 2014 WL 800468, at *2-3 (S.D. Fla. Feb. 28, 2014) is instructive. There, as here, the plaintiff sought hundreds of millions of dollars in damages. *Id.* at *1. There, as here, plaintiff's counsel relied on the plaintiff's own executives to "conduct[] their own searches for ESI and documents" and without using "search terms" from plaintiff's counsel. *Id.* For example, one of the plaintiff's senior executives "searched for emails containing only the term 'Pantheon,'" the defendant's name, and did not use any other search terms. *Id.* at *2. Based on the fact that plaintiff's counsel "allowed some of its client's executives to use a single search term to collect email," among other reasons, the court reached "the indisputable conclusion that the ESI and document searches were inadequate," that "some (and perhaps even a significant amount of) responsive discovery from [plaintiff] has not yet been located," and that this situation "mandate[d] a comprehensive forensic search of [plaintiff's] ESI and other sources of relevant documents." *Id.* at *2-3. As a result, the Court ordered plaintiff to (1) retain a third-party vendor to conduct a forensic analysis for ESI; (2) that the vendor search the ESI of an extensive list of custodians; (3) that plaintiff's counsel "interview each Custodian and identify and disclose to [defendant] any other custodians, potential sources of hard copy documents or ESI that are reasonably likely to contain relevant  information," and (4) that the parties agree within less than two weeks to "a preliminary list of proposed search terms," a "reasonable procedure by which the Search Terms may be reasonably refined, if necessary," and

4060607v1/014549

1   "a suitable format for production, including the specific metadata fields to be
2   provided." *Id.* at *4.

3       The same result is warranted here. Plaintiffs' sporadic production of
4   documents, admittedly using only a single search term "Zillow" for ESI, and
5   apparently self-collected by Plaintiffs and forwarded to counsel in many instances,
6   does not constitute a reasonably diligent search for responsive documents. This
7   procedure apparently missed a host of responsive documents. For example,
8   completely absent from Plaintiffs' productions are emails Plaintiffs received and/or
9   authored while employed at Zillow which they forwarded to their private email
10  accounts (some, but not all of which, Zillow is aware of from Zillow's email
11  records). (Brook Decl. ¶ 16, Ex. 9.) Additionally, simply searching for the word
12  "Zillow" would not necessarily capture emails or other documents relating to
13  Plaintiffs' claimed emotional distress and physical ailments, or emails discussing
14  their managers by name (rather than by employer), or documents regarding their
15  efforts to secure employment after leaving Zillow, as just a few examples. And it is
16  clear that Plaintiffs did not search at all, or sufficiently search, various electronic
17  accounts and devices, as reflected in the gaps in their text message, social media,
18  and email productions described below.

19      In light of Plaintiffs' utterly deficient document production, refusal to
20  disclose the method they used to search for responsive documents, and troubling
21  suggestions that they simply relied on Plaintiffs themselves to self-collect, Zillow
22  respectfully asks that the Court order the following:

23      *First*, within one week of the Court's Order, Plaintiffs' counsel should retain
24  a third-party vendor to conduct an ESI collection from Plaintiffs' files and disclose
25  the identity of the vendor to Zillow. Plaintiffs' counsel should direct the vendor to
26  conduct a forensically-sound ESI collection including (1) all of Plaintiffs' emails,
27  text messages, and other  electronic communications, from all devices, that were
28  exchanged with any current or former Zillow employee and any messages or
    threads in which such communications have been forwarded; (2) all of Plaintiffs'

9

social media profiles, postings, and messages, whether sent or received (including status updates, wall comments, causes joined, groups joined, activity streams, friend or contact lists, blog entries, photographs, or media clips); and (3) all documents from such files that hit on search terms agreed to by the parties or directed by the Court in accordance with the parties' agreement to a number of search terms at their Scheduling Conference.

*Second*, if the parties are unable to agree upon additional search terms within one week of the Court's Order, the Court should direct the parties to contact the Court immediately so that the Court can resolve any such dispute via informal telephonic conference.

*Third*, the Court should order Plaintiffs to substantially complete their production of responsive documents within three weeks of its Order and certify that it has done so. In short, Zillow moves to compel Plaintiffs to complete a reasonably diligent search and to substantially complete their production of documents by no later than the end of February.

In addition to this fundamental problem with Plaintiffs' search for responsive documents—or lack of such a search—Zillow also raises numerous specific deficiencies in Plaintiffs' document production below that must be corrected.

**2.      Plaintiffs' Argument and Proposed Resolution.**

The Johnson, Kerr, Peterson, Seda and Yousef Plaintiffs have produced all of the documents in their posession, custody and control as has been explained repeatedly to Zillow's counsel.  Each of these named Plaintiffs have searched their phones, if still in their possession, for email correspondence with any and all Zillow employee and produced all such text and email messages.  The email messages were produced with an app which allows for their particular phones to download text messages.  Any and all text messages and/or email messages Zillow employees were produced.  Defendant's insistence on there being additional information does not make it true.

**B.**   **Plaintiffs' Failure to Produce Damages Documents.**

   **1.**   **Defendant's Damages-Related Document Requests.**

Plaintiffs have failed to produce responsive documents concerning damages in response to the requests for production below:

**REQUEST FOR PRODUCTION NO. 3 [KREMER]:**

Produce all documents that relate to your claim for damages and equitable relief.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Responding Party Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

**REQUEST FOR PRODUCTION NO. 3 [YOUNG]:**

Produce all documents that relate to your claim for damages and equitable relief.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Responding Party objects to this request on the ground that this request impermissibly seeks premature disclosure of expert witness testimony and work product, in violation and circumvention of Code of Civil Procedure section 2034.210, et seq. Objection is also made on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine.

## REQUEST FOR PRODUCTION NO. 3 [JOHNSON, KERR, PETERSON, SEDA, YOUSEPH]:[2]

Produce all documents that relate to your claim for damages, restitution, penalties or any other monetary recovery as asserted in your First Amended Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects o the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiff's possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

### 2. Defendant's Argument and Proposed Resolution.

Despite claiming in excess of *$150 million* in damages, none of the Plaintiffs has produced any documents regarding his or her damages claim. (Brook Decl. ¶ 18.) The closest any of them comes is Kremer's production of paystubs she received *from Zillow*. (Brook Decl. ¶ 19, Ex. 11.) But Plaintiffs have not produced paystubs, W-2s, bank account statements, or any other documentation to show his or her earnings before and after working at Zillow. (Brook Decl. ¶ 18.) These documents are relevant to the question of Plaintiff's earning potential and whether, in fact, they have lost any income as a result of any action by Zillow (or can be expected to lose any income in the future). Similarly, none of the Plaintiff has produced any documents regarding his or her efforts to find other employment after departing Zillow—despite the fact that some admit to having applied for other jobs (or being employed in other jobs). (Brook Decl. ¶ 20.) And none of the Plaintiffs

---

[2] In the *Johnson* action, Zillow's Request No.3 and Plaintiffs' responses thereto, were identical as to Plaintiffs Johnson, Kerr, Peterson, Seda, and Youseph. (Brook Decl. ¶.)

1    have produced any documentation regarding their past and future medical expenses,

2    despite the fact that many expressly claim such damages. (Brook Decl. ¶ 21.)

3        Zillow is entitled to production of all documentation relating to any medical

4    expenses and lost earnings. With respect to medical expenses, this would include

5    documentation of any medical expenses already paid by Plaintiffs. With respect to

6    lost earnings, this would include Plaintiffs' (1) paystubs, (2) W-2s, and (3) tax

7    returns for three years preceding their employment at Zillow to the present.

8        These documents are plainly relevant to Plaintiffs' claim for damages. For

9    example, the court in *Gonzalez v. Hickman*, 2007 WL 323635, at *5 (C.D. Cal.

10   June 28, 2007), held that plaintiff's claim for "economic damages" based on "lost

11   earning potential" would "depend[] on both undisclosed *documentary evidence of*

12   *past earnings*," among other things. (emphasis added); *see also, e.g.*, *Walden v.*

13   *United States*, 31 F. Supp. 2d 1230, 1235 (S.D. Cal. 1998) (holding an "award for

14   lost or future earnings must be based on actual proof of the amount of impairment

15   and not mere conjecture," and that "[t]he base figure used to calculate future wage

16   loss is the difference between what a person earned before" his alleged injury "and

17   what he would be able to earn upon returning to work, not necessarily in the same

18   job"). Similarly, in *Alexander v. Wal-Mart Stores, Inc.*, 2013 WL 427132, at *7 (D.

19   Nev. Feb. 1, 2013), the defendant sought an order "prohibiting plaintiff from

20   seeking lost wages because plaintiff failed to provide any evidentiary materials

21   during discovery under Rule 26 that informed defendant how the computations for

22   lost wages would be calculated." The plaintiff in that case, like the plaintiffs here,

23   "did not provide any earnings related documents whatsoever—*i.e.*, bank statements,

24   tax returns, paycheck stubs, or payroll records." *Id.* As a result, the court held that

25   "plaintiff may not seek any damages for lost wages because plaintiff failed to

26   provide any proof of lost wages or damages computation during discovery." *Id*.

27   Plaintiffs have offered no argument as to why such documents are not relevant, nor

28   any excuse for why they have failed to produce such documents nearly five months

after they indicated they would substantially complete their document production. (Brook Decl. ¶¶ 2–13.)

Nor can Plaintiffs withhold such documents on any privilege or privacy grounds. Numerous courts in the Ninth Circuit have recognized that where, as here, a plaintiff claims damages in the form of lost earnings, any privilege against producing tax returns is waived. *See, e.g.*, *Endsley v. Travelers Property Cas. Ins. Co.*, 2015 WL 2380657, at *3 (E.D. Cal. May 18, 2015) (ordering production of plaintiff's tax returns over privilege objection because plaintiff was "suing to recover damages for income lost"); *Valdez v. Travelers Indem. Co.*, 2013 WL 3989583, at *5 (N.D. Cal. Aug. 2, 2013) ("Plaintiffs' allegations regarding damages and lost income present a sufficient basis for compelling the production of the tax returns, though the privilege could also be waived since the damages claims constitute the 'gravamen' of Plaintiffs' claim."); *Salazar v. Basic*, 2006 WL 3802094, at *3 (D. Ariz. Dec. 22, 2006) ("Plaintiffs have waived their privilege against disclosing tax records as their assertion of the privilege is utterly inconsistent with the gravamen of their claim for damages based on loss of earnings and future earnings . . . .").

Plaintiffs should be ordered to produce relevant documents regarding their damages claims including:

- Paystubs, W-2s, bank account statements, and any other documents sufficient to show all of Plaintiffs' earnings from 2009 to the present;

- Federal and state tax returns from 2009 to the present; and

- Receipts, medical bills, bank account or credit card statements, and any other documents related to any medical expenses Plaintiffs allegedly incurred as a result of any actions by Zillow.

In light of Plaintiffs' damages claims exceeding $150 million, Zillow is entitled to test Plaintiffs' claims with the documents requested.

### 3.    Plaintiffs' Argument and Proposed Resolution.

The tax returns and financial informaiton requested by Defendants is privileged. *Webb v. Standard Oil Co.*, 49 Cal.2d 509, 513.    While Plaintiffs

14

acknowledge that the tax return privilege is not absolute, none of the exceptions are applicable here and especially because the information is otherwise available. *Deployment Medicine Consultants,Inc. v. Pipes*, 2010 WL 4853814, at \*2-3 (2010).

Plaintiffs Johnson, Kerr, Petersen, Seda, and Youseph have all responded to interrogatories clearly and pain-stakingly delineated their respective job searches after being terminated from Zillow.  Further, each of the named Plaintiffs have signed authorizations for subpoenas to be served for the production of their medical records and/or have produced their medical records, including billing.  Accordingly, no further responses are required.  Again, in deposition testimony, Defendant may inquire further as to the details surrounding each of Plaintiffs' respective job searches.

**C.**   **Plaintiffs' Failure to Produce Text Message and Social Media Documents.**

**1.**   **Defendant's Texting and Social Media Document Requests.**

Plaintiffs have failed to produce complete text messaging and social media communications relevant to this case, despite Zillow's numerous requests for such information. Although Zillow's General Instructions make clear that Plaintiffs are to search and produce text message and social media information responsive to all of its document requests (Brook Decl.  ¶ 23; ¶ 29 at Ex. 25 (Zillow's Requests for Production to Kremer defining "document" as "synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A)")),[3] below Zillow calls out those requests where production of this information is of particular importance. As explained herein, information responsive to these requests is likely to lead to the discovery of admissible evidence relating to Plaintiffs' underlying claims of harassment and discrimination, as well as Plaintiffs' claims of severe emotional distress.

---

[3] The same general instruction appears in Zillow's Requests for Production in all four cases. (Brook Decl. ¶ 23.)

**a.** *Kremer v. Zillow*.

## REQUEST FOR PRODUCTION NO. 2:

Produce all documents related to your employment at Zillow, including time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and personnel files.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Responding Party objects to this request on the ground that this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

## REQUEST FOR PRODUCTION NO. 17:

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with those persons identified in your Complaint. The individuals named in your Complaint are:

a) Jon Boller;
b) Edward Cornelius;
c) Cody Fagnant;
d) Lindsay Hay;
e) Hy Lam;
f) Andreas Madsen;
g) Gabe Schmidt;
h) Doug Slotkin; and
i) Any and all representatives of Zillow's human resources department.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit

16

itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiffs Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

**REQUEST FOR PRODUCTION NO. 18:**

To the extent not already produced in response to Request No. 17, produce the complete text message history for any conversations you have had with Gabe Schmidt, including, but not necessarily limited to, the complete text message history for the texts excerpted in your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows: Responding Party produced documents bates stamped KREMER 000001-000394.

**REQUEST FOR PRODUCTION NO. 19:**

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with Adrienne Schmidt.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties.

17

Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control.   At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.  Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

## REQUEST FOR PRODUCTION NO. 33:

To the extent not already produced, produce all notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and notations, writings or recordings of any type relating to the alleged wrongful acts by Zillow.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Responding Party objects to this request on the ground that this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, this request is vague and ambiguous as to the phrase "wrongful acts." Objection, this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this request on the ground that this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control.   At this time, Responding Party is not withholding any documents on the basis of her objections.  Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.  Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

## REQUEST FOR PRODUCTION NO. 37:

Produce all non-privileged documents relating to your decision to bring this lawsuit, including, but not necessarily limited to, any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), with other current or former Zillow employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit

18

itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

Responding Party produced documents bates stamped KREMER 000001-000394.

### b.    *Young v. Zillow*.

## REQUEST FOR PRODUCTION NO. 2:

Produce all documents related to your employment at Zillow, including time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and personnel files.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Responding Party objects to this request on the ground that this request is vague, ambiguous, and overbroad as to time. Objection, this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection is also made on the ground that this request calls for information that is equally available to Defendant or exclusively in Defendant's possession. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

Responding Party Produces documents bates stamped YOUNG 0001, 00040044, 0054-0061.

## REQUEST FOR PRODUCTION NO. 28:

19

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you had with anyone between October 9, 2014, and October 30, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence.   Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control.  At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

Responding Party produces documents bates stamped YOUNG 0006- 0007, 0040-0044.

**REQUEST FOR PRODUCTION NO. 30:**

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with anyone currently or formerly employed at Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence.   Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control.   At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

20

After diligent search and reasonable inquiry, Responding Party is not aware of any documents responsive to this request.  Discovery and investigation is ongoing.

**REQUEST FOR PRODUCTION NO. 41:**

Produce all notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and notations, writings or recordings of any type relating to the alleged wrongful acts by Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Without waiving said objections,   Responding Party responds as follows:

Responding Party produces documents bates stamped YOUNG 0006- 0044.

**REQUEST FOR PRODUCTION NO. 45:**

Produce all non-privileged documents relating to your decision to bring this lawsuit, including, but not necessarily limited to, any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), with other current or former Zillow employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence.  Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Objection, this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, Responding Party shall produce responsive, non-privileged documents in her possession, custody or control.  At this time, Responding Party is not withholding any documents on the basis of her objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents

21

on a rolling basis as they may be discovered. Without waiving said objections, Responding Party responds as follows:

After diligent search and reasonable inquiry, Responding Party cannot comply with this request because such documents are not in her custody, control, or possession. Discovery and investigation is going.

### c.    *Johnson, et. al. v. Zillow.*

## REQUEST FOR PRODUCTION NO. 4 [JOHNSON]:

All documents that relate to any communications, including any communications  made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with any of the following persons:

a) Jon Boller
b) Ashley Boehler;
c) James Friedrich;
d) Cody Fagnant;
e) Doug Slotkin;
f) Jami Thomas;
g) Edward Cornelius
h) Any and all representatives of Zillow's human resources department;
i) Any of the other Plaintiffs in this action;
j) Rachel Kremer;
k) Jennifer Young; and
l) Any other current or former Zillow employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

## REQUEST FOR PRODUCTION NO. 15 [JOHNSON]:

All time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to

22

Facebook, Twitter, Instagram, and Youtube), personnel files, and writings and recordings of any type relating to any alleged wrongful acts by Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 4 [SEDA]:**

All documents that relate to any communications, including any communications   made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with any of the following persons:

a) Jon Boller
b) Ashley Boehler;
c) James Friedrich;
d) Cody Fagnant;
e) Doug Slotkin;
f) Jami Thomas;
g) Edward Cornelius
h) Any and all representatives of Zillow's human resources department;
i) Any of the other Plaintiffs in this action;
j) Rachel Kremer
k) Jennifer Young; and
1) Any other current or former Zillow employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4 [SEDA]:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

23

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 19 [SEDA]:**

All time sheets, notes, handbooks, memoranda agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and Youtube), personnel files, and writings and recordings of any type relating to any alleged wrongful acts by Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.
Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.
Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 4 [KERR]:**

All documents that relate to any communications, including any communications  made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with any of the following persons:

a) Jon Boller
b) Ashley Boehler;
c) James Friedrich;
d) Cody Fagnant;
e) Doug Slotkin;
f) Jami Thomas;
g) Edward Cornelius
h) Any and all representatives of Zillow's human resources department;
i) Any of the other Plaintiffs in this action;
j) Rachel Kremer
k) Jennifer Young; and
1) Any other current or former Zillow employees.

24

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 13 [KERR]:**

All time sheets, notes, handbooks, memoranda agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and Youtube), personnel files, and writings and recordings of any type relating to any alleged wrongful acts by Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 4 [PETERSON]:**

All documents that relate to any communications, including any communications  made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with any of the following persons:
a) Jon Boller
b) Ashley Boehler;
c) James Friedrich;

25

d) Cody Fagnant;
e) Doug Slotkin;
f) Jami Thomas;
g) Edward Cornelius
h) Any and all representatives of Zillow's human resources department;
i) Any of the other Plaintiffs in this action;
j) Rachel Kremer
k) Jennifer Young; and
1) Any other current or former Zillow employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

## REQUEST FOR PRODUCTION NO. 15 [PETERSON]:

All time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and Youtube), personnel files, and writings and recordings of any type relating to any alleged wrongful acts by Zillow.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search. Discovery is ongoing and Plaintiff reserves the right to amend his answer.

## REQUEST FOR PRODUCTION NO. 4 [YOUSEPH]:

All documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with any of the following persons:

a) Jon Boller
b) Ashley Boehler;
c) James Friedrich;
d) Cody Fagnant;
e) Doug Slotkin;
f) Jami Thomas;
g) Edward Cornelius
h) Any and all representatives of Zillow's human resources department;
i) Any of the other Plaintiffs in this action;
j) Rachel Kremer
k) Jennifer Young; and
l) Any other current or former Zillow employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

**REQUEST FOR PRODUCTION NO. 17 [YOUSEPH]:**

All time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and Youtube), personnel files, and writings and recordings of any type relating to any alleged wrongful acts by Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff objects to this Request in that it is overbroad with respect to time and scope, and, therefore, burdensome and harassing. Plaintiff further objects to this Request in that it is vague and ambiguous, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the

27

4060607v1/014549

extent that this Request calls for premature expert opinion, attorney work-product, legal conclusions and/or privileged documents.

Subject to and without waiving the foregoing or his General Objections, Plaintiff responds as follows: To the extent that such documents exist, Plaintiff will produce all non-privileged responsive documents in Plaintiffs possession, custody, or control that are located in the course of a reasonably diligent search.

Discovery is ongoing and Plaintiff reserves the right to amend his answer.

### d. *Boehler, et. al. v. Zillow.*

## REQUEST FOR PRODUCTION NO. 2 [BOEHLER]:

Produce all documents related to your employment at Zillow, including time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and personnel files.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence. Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege. Objection. Responding Party shall produce responsive, non-privileged documents in his possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of his objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.

Notwithstanding the foregoing objections, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces Bates-stamped documents BOEHLER000001– BOEHLER000085.

## REQUEST FOR PRODUCTION NO. 8 [BOEHLER]:

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with those persons identified in your Complaint. The individuals named in your Complaint, directly or inferentially, include:

a) Jon Boller;

28

b) Edward Cornelius;
c) Cody Fagnant;
d) Gabe Schmidt;
e) James Friedrich;
f) Doug Slotkin; and
g)Any and all representatives of Zillow's human resources department.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence.   Objection. Responding Party shall produce responsive, non-privileged documents in his possession, custody or control.  At this time, Responding Party is not withholding any documents on the basis of his objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.

Notwithstanding the foregoing objections, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces Bates-stamped documents BOEHLER000001– BOEHLER000085.

## REQUEST FOR PRODUCTION NO. 11 [BOEHLER]:

To the extent not already produced, produce all notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and notations, writings or recordings of any type relating to the alleged wrongful acts by Zillow.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence.  Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege.   Objection. Responding Party shall produce responsive, non-privileged documents in his possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of his objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.

4060607v1/014549

Notwithstanding the foregoing objections, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces no documents, as he has already produced all documents presently in his possession, control, or custody relating to the alleged wrongful acts by Zillow. Discovery is ongoing and Responding Party specifically reserves the right to amend this answer.

## REQUEST FOR PRODUCTION NO. 12 [BOEHLER]:

Produce all non-privileged documents relating to your decision to bring this lawsuit, including, but not necessarily limited to, any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), with other current or former Zillow employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence. Objection. Responding Party shall produce responsive, non-privileged documents in his possession, custody or control. At this time, Responding Party is not withholding any documents on the basis of his objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.

Notwithstanding the foregoing objections, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces Bates-stamped documents BOEHLER000001– BOEHLER000085.

## REQUEST FOR PRODUCTION NO. 23 [BOEHLER]:

Produce all documents related to your claim that ―Zillow managers emailed, text messaged, and communicated excessively with Mr. Boehler during his non-holiday vacation time in July and August, 2014, as alleged in paragraph 42h of the Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party.

Notwithstanding the foregoing objection, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces Bates-stamped documents [sic].

30

**REQUEST FOR PRODUCTION NO. 25 [BOEHLER]:**

Produce all documents related to your claim that ―Zillow managers emailed, text messaged, and communicated excessively with Mr. Boehler during his non-holiday vacation time in July and August, 2014, as alleged in paragraph 42h of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party.

Notwithstanding the foregoing objection, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces Bates-stamped documents BOEHLER 000110–BOEHLER 000111, BOEHLER 000144–BOEHLER 000151.

**REQUEST FOR PRODUCTION NO. 2 [FRIEDRICH]:**

Produce all documents related to your employment at Zillow, including time sheets, notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and personnel files.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence. Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege.

Notwithstanding the foregoing objections, and to the extent that such documents exists and are in Responding Party's possession, control, or custody, Responding produces Bates-stamped documents FRIEDRICH000001–FRIEDRCIH000207.

**REQUEST FOR PRODUCTION NO. 3 [FRIEDRICH]:**

Produce all documents that relate to any communications, including any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), you have had with those persons identified in your Complaint. The individuals named in your Complaint, by name or implication, include:

31

a) Jon Boller;
b) Ashley Boehler;
c) Cody Fagnant;
d) Doug Slotkin;
e) Tyler Robertson;
f) Jami Thomas; and
g) Any and all representatives of Zillow's human resources department.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, and to the extent that such documents exists and are in Responding Party's possession, control, or custody, Responding produces Bates-stamped documents FRIEDRICH000001–FRIEDRICH000207.

## REQUEST FOR PRODUCTION NO. 8 [FRIEDRICH]:

To the extent not already produced, produce all notes, handbooks, memoranda, agreements, correspondence, diaries, emails (including any personal email(s)), text messages, social media posts (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), and notations, writings or recordings of any type relating to the alleged wrongful acts by Zillow.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence. Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege.

Notwithstanding the foregoing objections, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces no documents, as he has already produced all documents presently in his possession, control, or custody relating to the alleged wrongful acts by Zillow. Discovery is ongoing and Responding Party specifically reserves the right to amend this answer.

### REQUEST FOR PRODUCTION NO. 9 [FRIEDRICH]:

Produce all non-privileged documents relating to your decision to bring this lawsuit, including, but not necessarily limited to, any communications made using your personal email(s), cellular telephone(s) or other mobile devices, or social media cites (including, but not necessarily limited to Facebook, Twitter, Instagram, and YouTube), with other current or former Zillow employees.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence. Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege.

Notwithstanding the foregoing objections, and to the extent that such documents exists and are in Responding Party's possession, control, or custody, Responding produces Bates-stamped documents FRIEDRICH000001–FRIEDRCIH000271.

### 2.    Defendant's Argument and Proposed Resolution.

On November 23, 2015, Zillow sent Plaintiffs a 16-page letter identifying these requests for text message and social media-related documents. (Brook Decl. ¶ 7, Ex. 4.) This letter also detailed Zillow's position that Plaintiffs should produce information responsive to these requests as well as the bulk of the case law cited herein. (*Id*.) To date, and despite numerous efforts by Zillow (Brook Decl. ¶¶ 7–13), Plaintiffs have failed to explain, either in writing or during the parties' conferences, why they disagree with the bulk of Zillow's letter. Plaintiffs have likewise failed to address Zillow's case law, nor have Plaintiffs cited a single case in support of their position. (*Id*.)

Text Message Threads. In response to the above requests, Plaintiffs should be compelled to produce *complete* text message threads between themselves and: (i) the individuals named in Plaintiffs' respective complaints, initial disclosures, and interrogatory responses; and (ii) and any other persons, including the other Plaintiffs, with whom Plaintiffs discussed issues relating to their employment with

or claims against Zillow. This information is likely to lead to the discovery of admissible evidence relating to Plaintiffs' underlying claims of harassment, discrimination, and retaliation, not to mention Plaintiffs' claims of severe emotional distress, as, *according to Plaintiffs*, text messages exchanged between Plaintiffs and their former co-workers and managers form the basis of their claims against Zillow.

*First*, that Plaintiffs are required to search for and produce responsive text messages they exchanged with potential witnesses cannot seriously be disputed. To the contrary, Plaintiffs are clearly obligated to produce their responsive communications with people they have identified in their complaints, initial disclosures, and interrogatory responses as being likely to have discoverable information relevant to their claims. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). (Brook Brook Decl. ¶ 22, Exhs. 12–15 (Plaintiffs' Initial Disclosures).)

*Second*, Plaintiffs should be required to produce their *complete* text message threads with such persons because the context in which any alleged harassing or discriminatory text messages were sent—or the absence of any such messages—is critical to refuting Plaintiffs' claims. For example, Kremer initially produced only a handful of her text messages with Mr. Schmidt, her alleged harasser. And yet additional text messages from the thread demonstrate that Kremer in fact welcomed much of the conduct she contends was harassing. (*See* Dkt. Nos. 13 (Memorandum in Support of Zillow's Motion to Dismiss), 13–1 (Declaration of Steven G. Sklaver), 13–2 (more complete text message thread between Kremer and alleged harasser—Mr. Schmidt—provided by Mr. Schmidt), 13–3 (more complete text message thread between Kremer and alleged harasser—Mr. Schmidt—provided by Mr. Schmidt).) Indeed, *Judge Carter himself* noted that the complete text message history between Kremer and Mr. Schmidt is central to Zillow's defense: "The fact that Plaintiff sent sexually explicit messages back to Mr. Schmidt and Mr. Fagnant will likely make it more difficult for her to persuade a jury that the alleged harassment was unwelcome than if she had not sent them." (Dkt. No. 31 at 6.) Along similar lines, Plaintiffs claim that harassing and discriminatory messages

34

1     were pervasive at Zillow, a workplace that Plaintiff Johnson likens to a

2     "concentration camp." (Dkt. No. 21 ¶ 62). Therefore, seeing the complete text

3     message history between Plaintiffs and others at Zillow may be relevant simply due

4     to the *absence* of pervasive, discriminatory or harassing messages (even if the

5     messages that *are* present, standing alone, seem unrelated).

6          *Third*, Plaintiffs' attempt to limit their production of social media likewise

7     fails. Many, if not all, of the Plaintiffs had a presence on social media—including

8     Facebook, Twitter, Instagram, and other accounts. Some admittedly discussed their

9     claims on such social media accounts. (Brook Decl. ¶ 28, Ex. 19 (New York Times

10    article in which Kremer explains that information about her case "was soon all over

11    her Facebook feed").) Others may have been active on such accounts during times

12    they claimed to be in the hospital, without access to phones, and unable to work.

13    (Brook Decl. ¶ 33, Ex. 22 (Young's publicly viewable Twitter feed that she posted

14    too during the period of time that she claims to have been recovering from

15    hospitalization).) Still another chose to post a non-religious icon as his Facebook

16    picture, while claiming his working life at Zillow was so intolerable as to constitute

17    constructive discharge because he was limited to posting similar, non-religious

18    icons on Zillow's sales database. (Brook Decl. ¶ 46, Ex. 31 (Seda's publicly

19    viewable Facebook wall).) Such documents are relevant and responsive to Zillow's

20    request and cannot be excluded from the search for responsive documents in this

21    era of social media. *See, e.g.*, Fed. R. Civ. P. 34(a)(1)(A) (specifying that a party

22    may serve a request for "any designated documents or electronically stored

23    information . . . stored in any medium from which information can be obtained

24    either directly or, if necessary, after translation by the responding party into a

25    reasonably usable form".)

26          Plaintiffs have refused to explain, let alone provide any case law in support

27    of, their refusal to produce such responsive documents. (Brook Decl. ¶¶ 7–13.)  To

28    the contrary, Plaintiffs' efforts to limit their production to text messages and social

      media that they intend to rely on reflects an improperly myopic view of their

                                            35

1    discovery obligations. Courts have recognized that limiting text message and social
2    media productions to communications that directly reference matters alleged in the
3    complaint "likely would not encompass clearly relevant communications and in fact
4    would tend only to yield production of communications supportive of the
5    claimants' allegations." *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430,
6    432–37 (S.D. Ind. 2010); *see also Robinson v. Jones Lang LaSalle Americas, Inc.*,
7    2012 WL 3763545, at *1–2 (D. Or. Aug. 29, 2012) (accord).

8         For that reason, in an employment discrimination and retaliation suit
9    involving claims of emotional distress, the court in *Simply Storage* required
10   production of text message and social media communications that plaintiffs sent to,
11   received from, or exchanged with any current and former employee of defendant, as
12   well as those forwarding any such communications, over a multi-year period. 270
13   F.R.D. at 432–37. Similarly, in *Robinson*, the court ordered Plaintiffs to produce
14   four years' worth of "email or text messages that plaintiff sent to, received from, or
15   exchanged with any current and former employee of defendant, as well as messages
16   forwarding such messages," in addition to any "online social media
17   communications by plaintiff, including profiles, postings, messages, status updates,
18   wall comments," and much more, to the extent they "reveal, refer, or relate to" any
19   "significant emotion, feeling, or mental state allegedly caused by defendants" or
20   "events or communications that could reasonably be expected to produce a
21   significant emotion, feeling or mental state allegedly caused by defendant's
22   conduct." *Robinson*, 2012 WL 3763545, at *2.

23        The same result is warranted here. For example, the absence of any harassing
24   messages in text message exchanges between Kremer and her Zillow colleagues
25   and managers is relevant to her incredibly broad claim that: "Disturbingly, these
26   types of communications from Zillow management were commonplace during
27   Kremer's employment. Indeed, the Zillow office culture in Southern California has
28   been described as an 'adult frat house' where sexual harassment and misconduct are
     normalized, condoned, and promoted by male managers." (Dkt. No. 35 ¶ 22.)

Zillow has the right to test this assertion, as well as the other Plaintiffs' similarly broad allegations of discrimination and harassment, as described in more detail as to each Plaintiff below:

### a.   Rachel Kremer.

Kremer's harassment claim is rooted in a series of texts she claims to have received from Zillow employees and managers, which she attached to her Complaint. (*See, e.g.*, Dkt. No. 35 ¶ 21 (listing a series of text messages Kremer claims to have received from former Zillow employee Gabe Schmidt and current Zillow manager Cody Fagnant), Exhs. B–E (attached screenshots of the aforementioned text messages).) Kremer claims that these texts were harassing and that she suffered emotional distress as a result. (*See, e.g.*, Dkt. No. 35 ¶ 21 ("A few examples in the long list of unwelcome and disturbing sexual harassment include, but are not limited to, the following [email and text messages]", ¶ 66 "Plaintiff suffered severe emotional distress as a result of the persistent and outrageous sexual harassment which went unchecked and further encouraged by Zillow managers.").)

Text Messages with Gabe and Adrienne Schmidt. While the gravamen of Kremer's complaint is based on allegedly harassing text messages exchanged with former Zillow manager Gabe Schmidt, it is not clear that she has produced the *complete* text message history with Mr. Schmidt or with Mr. Schmidt's wife (who she was close friends with). For example, although Mr. Schmidt and Kremer texted nearly every day—sometimes multiple times a day—for much of the period in which Kremer was employed at Zillow, the thread produced by Kremer includes only two messages for the entire month of February, 2014. (Brook Decl. ¶ 24, Ex. 16.) The thread also abruptly ends on August 23, 2014, even though it appears at that time that two were still on good terms. (*Id*. (Kremer to Schmidt: "Hey there is a chili cook off and booze fair tomorrow at high times. You wanna bring the bros up and meet us tomorrow?" Schmidt to Kremer: "They are leaving around noon tomorrow. Sounds fun but might be too hard with the baby.").) Along similar lines, Kremer maintained a close friendship with Mrs. Schmidt—with whom she

37

frequently exchanged in the type of lewd banter Kremer now claims was harassing. (Brook Decl.  ¶ 24, Ex. 17.) Kremer's willingness to maintain a close personal relationship with Mrs. Schmidt, not to mention engage in the same type of banter with Mrs. Schmidt that she now alleges was harassing when received from Mr. Schmidt, is plainly relevant to her claims against Zillow. For these reasons, Kremer should be ordered to produce her complete text message history with Mr. and Mrs. Schmidt from the period of when she began work at Zillow through to the present.

Text Messages with Zillow Employees.  Similarly, throughout her interrogatory responses, Kremer frequently cites to text message conversations she claims to have had with her former co-workers and managers as evidence of both the claimed underlying misconduct, as well as her assertion that she reported said misconduct to Zillow. (Brook Decl. ¶ 30, Ex. 36 (Kremer Response to Interrogatory No. 3 – by which Kremer lists the allegedly harassing text messages she claims to have received from various Zillow employees and managers, No. 2 – by which Kremer attests that she complained of the alleged discriminatory conduct via text messages sent to Zillow managers and Human Resource representatives).) And yet Kremer has not produced text message threads, let along complete text message threads, with the following individuals named in her Complaint and Initial Disclosures: Ian Freeman (former Zillow ISC), James Friedrich (former Zillow ISC), Cody Fagnant (current Zillow manager), Tyler Robertson (current Zillow ISC), Andreas Madsen (former Zillow manager), Justin Lajoie (former Zillow ISC), Doug Slotkin (current Zillow manager), Jon Boller (current Zillow manager), and Tara Fournier (former Zillow Human Resources representative). (Brook Decl. ¶ 25.) It is also not clear whether Kremer has produced *complete* text message threads with other individuals named in her Complaint and Initial Disclosures including, but not limited to: Ashley Boehler (former Zillow ISC), Edward Cornelius (current Zillow manager), Jami Thomas (current Zillow manager), Hy Lam (former Zillow employee), and Hanja Enyeart (former Zillow Human Resources representative). (Brook Decl. ¶ 26.)

38

<u>Social Media Posts.</u> Kremer also has failed to produce *any* social media information responsive to Zillow's requests. (Brook Decl. ¶ 27.) This is despite the fact that Kremer maintained an active Facebook feed through which she was "friends" with many of the people named in her Complaint and Initial Disclosures. (Brook Decl. ¶ 27, Ex. 18 (screenshot of Kremer's publicly viewable Facebook wall).) Kremer has likewise refused to produce those social media posts in which she has admitted to discussing her claims against the Company. (Brook Decl. ¶ 28, Ex. 19.) Just as Kremer's complete text message thread sheds light on the nature of her relationship with Mr. Schmidt, so too will her communications with these individuals over social media.

### b.    Jennifer Young.

Young claims to have suffered harassment and discrimination on account of her age and alleged disability. She further claims that Zillow wrongfully terminated her employment following her hospitalization for an alleged back injury. (*See, e.g.*, Dkt. No. 23 ¶1 ("Plaintiff Jennifer Young, a forty-one year old single mother of two, brings this action against Zillow, Inc., for its conduct in discriminating against her on account of her age and illegally terminating her following her hospitalization caused by the working conditions at Zillow.").) Zillow denies these allegations. In fact, Young was an ineffective and frequently tardy or absent employee whom Zillow had no choice but to let go after she repeatedly failed to provide it with a doctor's note accounting for her several-week absence from work. (*See* Dkt. No. 18 (Zillow's Memorandum in Support of Motion to Dismiss).) Information regarding Young's employment at Zillow is plainly relevant to Young's claims and Zillow's defenses. Young, however, refuses to produce important text and social media information responsive to these requests.

<u>Text Messages with Manager.</u> Young refuses to produce her complete text message communications with her former manager Kelsey Didier. Instead, Young has produced just two screenshots of this much longer chain (Brook Decl. ¶ 31, Ex. 20), part of which Ms. Didier volunteered to Zillow prior to her own departure from

39

the Company (Brook Decl. ¶ 40, Ex. 28.) The part of this chain Zillow received from Ms. Didier plainly speaks to various issues in this case including, but not limited to:

- Young's performance issues: The messages demonstrate that Young frequently texted Ms. Didier to let her know that she would be running late to work that day, that she needed to leave early, or that she had already left early. (Brook Decl. ¶ 40, Ex. 28.) These messages are relevant to Young's claim that she was terminated despite successfully performing her job duties. (*See, e.g.*, Dkt. No. 23 at ¶ 18) whereby Young alleges that she ("successfully performed her duties and consistently met sales goals and other criteria established by Zillow").)

- Young's medical appointments: The same messages show that Young would frequently text Ms. Didier about her medical appointments. (Brook Decl. ¶ 40, Ex. 28.) These messages are relevant to Young's disability claims. (*See, e.g.*, Dkt. No. 23 (Young Complaint whereby she alleges disability discrimination).)

- Young's hospitalization: The same messages show that Young texted Ms. Didier when she checked herself in to the hospital. (Brook Decl. ¶ 40, Ex. 28.)  These messages are relevant to Young's core allegation that Zillow terminated her employment following her hospitalization during which she had limited access to her cellular telephone and laptop. (*See, e.g.*, Dkt. No. 23 at ¶¶ 29–44 (whereby Young cites to communications from Zillow, or alleged lack of communications from Zillow, as the primary basis of her wrongful termination claim).)

Accordingly, the court should order Young to immediately produce her complete text message history with Ms. Didier.

<u>Text Messages with Other Zillow Employees.</u> Young has likewise failed to produce *any* text messages with the 11 other Zillow ISCs and managers named in

40

her Initial Disclosures. (Brook Decl. ¶ 31.) This is despite the fact that specific information exists showing that Young likely communicated with the other individuals named in her Initial Disclosures via text message. As just one example, on November 21, 2014, Young emailed Ian Freeman—the plaintiff in a separate lawsuit being brought by Young's Counsel against Zillow—her cell number along with the following message: "Need all legal info! . . . Z is getting the Karma." (Brook Decl. ¶ 32, Ex. 21) Freeman, in turn, responded with his cell number. (*Id.*) To the extent Young texted with Freeman, or any of the other individuals in her Complaint, Initial Disclosures, or Interrogatory Responses about her decision to bring her lawsuit, or otherwise discussed her experiences at Zillow, this information is relevant and should be produced.

Text Messages During Absence from Work. Young has also failed to produce all of the communications she sent or received during the period in which she claims to have been hospitalized or otherwise recovering from her claimed hospitalization. (*See, e.g.*, Dkt. No. 23 at ¶¶ 29–44.) By this request, Zillow attempts to gain key information about Young's whereabouts and access to her cellular phone and laptop during this crucial period, during which Young claims to have been hospitalized for, and then at home recovering from, intense back pain. (*See id.*) Zillow has good reason to believe that all of these allegations are false. Regarding her access to communication devices, during the same period that Young claims to have been without easy access to her cellular phone or laptop she was able to post to social media about possible Halloween costumes, as well as upload pictures of her 2-year-old daughter playing dress-up. (Brook Decl. ¶ 33, Ex. 22.) This, as well as other information evidencing her ability to communicate during this period, is plainly relevant to Young's claim that she was not in a position—during this very same time period—to respond to Zillow's repeated requests for a doctor's note excusing her absence from work. Regarding the cause of Young's alleged hospitalization, documents obtained from Young's hospital reveal that, far from receiving treatment for back pain, she willingly checked herself in to a week-long

41

drug rehabilitation program for an addiction to opioids. (Brook Decl. ¶ 34, Ex. 23.) Communications from this key period may reveal more about whether Young knew in advance that she would be missing a certain amount of work in order to attend this program, as well as any arrangements she made with family and friends—as compared to her employer—to account for her time away.

Social Media. Young has also failed to produce *any* social media information responsive to this request. (Brook Decl. ¶ 33.) This is despite the fact that Young maintained an active Twitter feed in which she frequently made posts relevant to her case against Zillow. (Brook Decl. ¶33, Ex. 22.) As just one example, an issue in dispute is Young's medical condition—particularly during the period in October, 2014, during when she claims to have been hospitalized and otherwise unable to come into work. (*See, e.g.*, Dkt. No. 23 at ¶¶ 29–44.) As explained above, during this same period, Young's Twitter public feed reveals that she was able to communicate with her social media followers and plan Halloween costumes. (Brook Decl. ¶ 33, Ex. 22.) Specifically, on October 24, 2014, during this key time period when Young was supposedly not able to come into work, Young posted on Twitter: "IT'S FRIDAY!! Yes!! Have you already started the Halloween parties & costumes? What should I be? Hmmm." (*Id*.) Just as Young's complete text message thread sheds light her alleged medical condition and necessitated absence from work, so too will her communications over social media.

### c.     The *Johnson* Plaintiffs.

The *Johnson* plaintiffs allege that text messages attached to their Complaint are examples of the "discriminatory culture" Plaintiffs faced at Zillow "on a daily basis" (Dkt. No. 21, at ¶ 1, Ex. A). And yet Plaintiffs' text message production has been exceedingly limited.

Text Messages. Plaintiffs Michael Kerr and Jason Youseph have not produced a single text message. (Brook Decl. ¶ 41.) Stephen Johnson produced sporadic text messages with two of his managers, but not the entire threads. (Brook Decl. ¶ 42, Ex. 29.) Mr. Johnson also produced text messages with other Zillow

employees, not a party to any of these cases, regarding his claims and evidence that might support them. (Brook Decl. at ¶ 43, Ex. 30.) Reginald Peterson produced sporadic text messages with other Zillow ISCs, but not a single text message with any of his managers. (Brook Decl. ¶ 44.) And Ryan Seda produced a handful of screen-captures of partial text message threads, failing to produce important text messages that his co-Plaintiff Johnson produced—including one where Seda says in response to a request to join the lawsuit "let's get paid." (Brook Decl. ¶ 45.) The limited production of text messages made by Plaintiffs Johnson, Peterson, and Seda demonstrates that messages they exchanged with other Zillow employees are likely to be relevant. Yet their productions range from non-existent to incomplete.

Social Media Posts. None of the Johnson Plaintiffs has produced any social-media information. (Brook Decl. ¶ 46.) And yet such information is of critical importance. For example, Plaintiff Seda claims that his religion required him to post a religious "sales icon" in Zillow's online database, that Zillow forced him to remove it and post a secular icon, and that doing so was so intolerable to him that it constituted constructive discharge. (Dkt. No. 21 at ¶¶ 2, 25–27.) And yet evidence Zillow has uncovered demonstrates that (1) Plaintiff had, at times, voluntarily used a secular "sales icon" at Zillow, and (2) to this day, Plaintiff uses a secular icon as his Facebook photo. (Brook Decl. ¶ 46, Ex. 31.) The fact that Plaintiff claims it would have been intolerable for Zillow to require him to use a secular "sales icon," when in his everyday life, he chooses to use the same secular icon as his Facebook photo, would tend to undermine that Zillow's request was so intolerable to Plaintiff that it constituted a constructive discharge.

In sum, having put their text message histories at issue, Plaintiffs cannot now refuse to provide complete threads with the persons who they themselves contend have knowledge relevant to their claims against Zillow. To decide as such would be allow Plaintiffs to cherry-pick only those texts that support their allegations, while denying Zillow the opportunity to prepare its defense. Zillow therefore respectfully asks this Court to compel Plaintiffs to produce their *complete* text message threads

43

with (1) the individuals named in Plaintiffs' respective complaints, initial disclosures, and interrogatory responses; and (2) any other persons, including the other Plaintiffs, with whom Plaintiffs discussed issues relating to their employment with or claims against Zillow.

### d. Ashley Boehler.

In support of his retaliation claim, Boehler alleges he received excessive calls, texts, and emails from Zillow while on vacation. (*See* Dkt. No. 34 ¶ 42h ("Zillow managers emailed, text messaged, and communicated excessively with Mr. Boehler during his non-holiday vacation time in July and August, 2014.").) But to date, Boehler has not produced the relevant calls, texts, and emails on which he relies to make such an allegation. (Brook Decl. ¶ 52.) Moreover, Boehler's allegation makes evident that a basis of his retaliation claim is alleged retaliation by electronic means. To the extent Boehler intends to rely on such a theory, Zillow is entitled to not only the communications he specifically alleges were retaliatory, but also, the full context of Boehler's electronic communications with Zillow employees, so that Zillow can adequately prepare its defense.

Moreover, Boehler has clearly discussed matters related to his claims of retaliation at Zillow with other former Zillow employees via text message. For example, in January 2015, he forwarded an email he sent to Zillow management to his co-plaintiff, James Friedrich, via text message. (Brook Decl. ¶ 53, Ex. 37.) In the emailed message, Boehler stated that he found it "upsetting and disrespectful" for Zillow to purposely not announce him as an award winner, which is one of the examples of retaliation Boehler now alleges he faced. (Dkt. No. 32 at ¶ 42p.) He described this interaction with Zillow as a "small victory." (Brook Decl. ¶ 53, Ex. 37.) The text messages were produced by Friedrich, not Boehler.

For these reasons, Plaintiffs should be required to make the complete productions of their text message and social media documents as described above, rather than being permitted to cherry-pick what they will produce.

### 3.    Plaintiffs' Argument and Proposed Resolution.

Plaintiffs Johnson, Kerr, Petersen, Seda and Youseph have produced any and all text messages currently within their possession, custody and control. Some of the named Plaintiffs no longer had the phones on which they texted at the time of their employment at Zillow.   Some no longer had text messages on their phone. What they did have was produced in full and complete form and was produced by using an application which downloads the text chains as they appear in the phones. In fact, Plaintiffs were over-inclusive in producing these texts, at times producing more than what was called for in the relevant scope.  Moreover, Plaintiffs Johnson, Kerr, Petersen, Seda and Youseph have each searched their respective social media posts for relevant and responsive information and have produced all of that which is in their possession, custody and control. Accordingly, no further production of text messages and/or social media posts is warranted.

## III.    INDIVIDUAL ISSUES IN DISPUTE

This section addresses issues unique to particular Plaintiffs.

### A.    *Young v. Zillow*.

#### 1.    Young's Alleged Car Accident.

### REQUEST FOR PRODUCTION NO. 12:

Produce all documents that relate to your claim that you were involved with a car accident (the "accident") while employed at Zillow.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Responding Party objects to this request on the ground that this request seeks documents that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. Objection, this request is vague and ambiguous as to the phrase "alleged conduct." Objection, this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving said objections, Responding Party responds as follows:

Responding Party produces documents bates stamped YOUNG 0012-0014.  Discovery and investigation are ongoing.

**REQUEST FOR PRODUCTION NO. 38:**

Produce all documents that relate to any other lawsuit or litigation you initiated that involves the alleged accident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Not applicable.

**a.      Defendant's Argument and Proposed Resolution.**

Zillow seeks information relating to Young's claim that she was involved in a car accident that resulted in a back injury. (*See, e.g.*, Dkt. No. 23 at ¶ 23 ("On or about July 7, 2014, Ms. Young was hospitalized in connection with an automobile accident which caused injuries to her neck, back, and shoulders.").) In response, Young produced a single email chain in which she gives Zillow permission to contact the attorney representing her in litigation relating to that accident. (Brook Decl. ¶ 35, Ex. 24.) Young also claims, without explanation, that any information relating to any litigation she initiated involving the accident is "not applicable."

This Court has already held that the requested information is relevant to Young's claim that she is disabled and that the working conditions at Zillow allegedly exacerbated her condition, and should therefore be produced by third parties. (09/01/15 Informal Conference.) Young, however, refuses to produce anything more than this singular email chain, instead forcing Zillow to engage in an expensive and protracted third-party subpoena campaign. Despite Zillow's best efforts, which have included subpoenaing Young's car accident attorney, Young's insurance agent, the other driver's insurance agent, and Young's car dealership (Brook Decl. ¶ 36), Zillow still lacks some of the most basic information about when this car accident took place, what injuries Young suffered as a result, and whether Young has already been compensated for any of her alleged injuries. The Court should order Young to search for and produce all information relating to the car accident she supposedly suffered while employed at Zillow, including, but not necessarily limited to, any information relating to: (1) the existence of the accident;

(2) medical injuries stemming from the accident; and/or (3) disputes stemming from the accident.

### b.     Plaintiff's Argument and Proposed Resolution.

N/A.   Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 2.     Young's Post-Zillow Employment.

### REQUEST FOR PRODUCTION NO. 43:

Produce all documents relating to any efforts you have taken to find employment since the termination of your employment with Zillow.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 43:

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Without waiving said objections, Responding Party responds as follows:

After diligent search and reasonable inquiry, Responding Party cannot comply with this request because such documents are not in her custody, control, or possession. Discovery and investigation is ongoing.

### a.     Defendant's Argument and Proposed Resolution.

To address Young's claimed emotional distress and prospective damages model due to alleged wrongful termination, Zillow seeks information relating to Young's recent employment history. Young, however, responded by producing *no documents* and claiming that any responsive information is not in her "custody, control, or possession."[4]

---

[4] As was the case with information relating to Young's alleged car accident, this Court has already found that the requested information is relevant, in the context of a motion regarding discovery from third parties. (09/01/15 Informal Conference.) *See, e.g.*, *First v. Kia of El Cajon*, 2010 WL 3245778, at *2 (S.D. Cal. Aug. 17, 2010) ("Plaintiff's former employment records are reasonably calculated to lead to discovery of admissible evidence of Plaintiff's emotional state prior to his employment with Defendant."); *see also Luck v. University of San Diego*, 2014 WL 7111950 at *8 (S.D. Cal. 2014) (permitting discovery of plaintiff's compensation records from prior employers because information bears on requested damages).

Young's claim that such information is not in her control makes no sense. *See, e.g.* Handbk. Fed. Civ. Disc. & Disclosure § 9:13 (3d ed.) ("The test is whether the party has the legal right to control or obtain the items requested. The responding party cannot provide only those documents and things within its immediate possession; it must provide all documents and things to which it has a legal right to control or may obtain upon demand. This means that parties may be required to produce documents turned over to their attorneys or insurers, as well as copies of their tax returns, or copies of transcripts of their testimony in other proceedings."). Young plainly has control over any emails, resumes, etc. she sent to various employers, and to the Young has achieved employment, she has the right to request her personnel and other files from her new employer(s).

Zillow's efforts to obtain this information through subpoena highlight its importance to this case. Specifically, a subpoena to BoldLeads.com revealed that although Young was employed there for a few months after she was terminated from Zillow, she suddenly quit when BoldLeads asked that she provide a doctor's note before taking an unexpected medical leave. (Brook Decl. ¶ 37, Ex. 25.) Zillow has a right to any documents evidencing Young's compensation while at BoldLeads, as well as information about an ongoing medical condition that may be contributing to her alleged emotional distress or apparent inability to maintain steady employment. Accordingly, the Court should order Young to search for and produce all information relating to her: (1) post-Zillow employment; (2) any medical accommodations Young has requested from these employers; and (3) Young's salary and benefits with these employers.

### b.    Plaintiff's Argument and Proposed Resolution:

N/A.   Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 3.    Young's Other Lawsuits.

**REQUEST FOR PRODUCTION NO. 37:**

Produce all documents that relate to any other lawsuit or litigation you initiated wherein you alleged harassment, discrimination, and/or intentional or negligent infliction of emotional distress.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Not applicable.

### a.    Defendant's Argument and Proposed Resolution.

Zillow seeks information relating to any other lawsuit or litigation Young initiated where she alleged harassment, discrimination, and/or intentional or negligent infliction of emotional distress. In response, Young simply wrote: "Not applicable." This information, however, is plainly applicable to Young's claim of emotional distress, as Zillow has a right to determine whether Young's claimed emotional distress was primarily caused by Zillow, as she alleges, or by someone else. *See, e.g.*, CACI 1600 (providing that a component of intentional infliction of emotional distress is that the defendant's conduct was a substantial factor in causing the plaintiff's severe emotional distress). Evidence that Young has previously been the victim of harassment or discrimination, or that she suffered emotional distress, would clearly bear on this claim. Moreover, Zillow has good cause to believe that such information exists as publicly available filings indicate that Young was involved in two intensely litigated alimony battles, the more recent of which involved allegations of domestic violence and the issuance of a permanent restraining order, information that Young has *never produced*. (Brook Decl. ¶ 38, Exs. 26 (Case No. 00P000965, *Young v. Rebeil*,  Superior Court of California County of Orange, Case No. 13P001260, *Young v. Sherman*, Superior Court of California).) The Court should order Young to produce information responsive to this request.

### b.    Plaintiff's Argument and Proposed Resolution.

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

49

### 4.      Young's Travel Outside of California.

**REQUEST FOR PRODUCTION NO. 46:**

Produce all documents relating to any travel you have engaged in since becoming employed at Zillow through the present that caused you to leave the State of California.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiffs Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Without waiving said objections, Responding Party responds as follows:

Responding Party produces documents bates stamped YOUNG 0053.

#### a.      Defendant's Argument and Proposed Resolution.

Zillow seeks information relating to any out of state travel Young has engaged in since becoming employed at Zillow through to the present. This information is relevant to Young's claim that she was physically disabled and that her disability prevented her from being able to sit or stand for any significant periods of time, and should be produced. (*See, e.g.*, Dkt. No. 23 at ¶ 25 ("Following her car accident, Ms. Young would feel extreme pain in her back as a result of sitting or standing for the unreasonably long portions of time which Zillow required during the required 'blitz' and 'wave' call periods.").) In response, Young produced a single document evidencing a trip to Anaheim, California. (Brook Decl. ¶ 39, Ex. 27.) Certainly Young has more information responsive to this request, as her publicly available Twitter feed shows numerous trips to Hawaii during this period. (Brook Decl. ¶ 33, Ex. 22.) Young's ability to sit for multiple five plus hour flights between Los Angeles and Hawaii, clearly bears on her claim that she could not sit or stand for long periods of time while employed at Zillow. Accordingly, the Court should order Young to produce all information responsive to this request, including text message and social media information.

### b.   Plaintiff's Argument and Proposed Resolution.

N/A.   Plaintiffs failed to provide their portion of the   Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 5.   Young's Medical Treatment Documents.

**REQUEST FOR PRODUCTION NO. 34:**

Produce all documents that relate to your claim that, as a result of Zillow's alleged conduct, you have: (i) seen a psychiatrist; (ii) been diagnosed with and treated for various conditions; and (iii) been prescribed medication for these same conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Responding Party objects to this request on the ground that this request impermissibly seeks premature disclosure of expert witness testimony and work product, in violation and circumvention of Code of Civil Procedure section 2034.210.   Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy. Without waiving said objections, Responding Party responds as follows:

After diligent search and reasonable inquiry, Responding Party cannot comply with this request because such documents are not in her custody, control, or possession but rather in the possession of her medical providers.

**REQUEST FOR PRODUCTION NO. 35:**

Produce your complete medical records from any and all healthcare providers, including, but not necessarily limited to, all mental healthcare providers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy. Without waiving said objections, Responding Party responds as follows:

After diligent search and reasonable inquiry, Responding Party cannot comply with this request because such documents are not in her custody, control, or possession but rather in the possession of her medical providers.

**REQUEST FOR PRODUCTION NO. 36:**

1
2

Produce all documents that relate to your purchase, distribution, or use of any prescription drugs, including, but not necessarily limited to, aderol and sleeping aids, marijuana, and any other illegal drugs.

3

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

4
5
6
7
8

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy. Without waiving said objections, Responding Party responds as follows:

9
10

After diligent search and reasonable inquiry, Responding Party is not aware of any documents responsive to this request. Discovery and investigation is ongoing.

11

12

### a.    Defendant's Arguments and Proposed Resolution.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Young refuses to produce documents relating to her alleged physical or mental conditions, claiming that such documents are either not in her control or do not exit. These documents, however, are plainly in Young's possession, custody, or control. *See, e.g.*, *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007) ("Control is defined as the legal right to obtain documents upon demand."); *see also Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted) ("Thus, "[a] party responding to a Rule 34 production request . . . 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'"). Specifically, Young can reach out to any of her various medical providers or insurance companies and request that she be provided with her complete patient history, as well as any bills relating to her medical treatment. Although Defendant has tried to do the same via subpoenas, Defendant's effort does not absolve Young from herself seeking to produce any medical information relating to her claimed conditions that Zillow has not already secured via subpoena.

27
28

In short, Young's objection is without merit, and she should be ordered to produce information evidencing her medical condition.

### b.    Plaintiffs' Argument and Proposed Resolution.

N/A.   Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 6.    Young's Employment Documents.

**REQUEST FOR PRODUCTION NO. 43:**

Produce all documents relating to any efforts you have taken to find employment since the termination of your employment with Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiff's Constitutional Right to Privacy and/or the Constitutional Right to Privacy of third parties. Without waiving said objections, Responding Party responds as follows:

After diligent search and reasonable inquiry, Responding Party cannot comply with this request because such documents are not in her custody, control, or possession. Discovery and investigation is ongoing.

### a.    Defendant's Request(s) and Plaintiff's Response(s).

Young refuses to produce documents relating to her efforts to secure employment post-Zillow, claiming that such documents are either not in her control or do not exit. These documents, however, are plainly in Young's possession, custody, or control. *See, e.g.*, *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007) ("Control is defined as the legal right to obtain documents upon demand."); *see also Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted) ("Thus, "[a] party responding to a Rule 34 production request  . . . 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'"). Specifically, Young can reach out to any of her various post-Zillow employers and request that she be provided with her complete personnel file, as well as any information relating to her compensation. What is more, there is evidence that Young should have some of this

information in her own inbox, as documents produced by third-parties show her communicating with post-Zillow employers via her personal gmail account.

In short, Young's objection is without merit, and she should be ordered to produce information evidencing her efforts to find new employment.

### b.    Plaintiff's Argument and Proposed Resolution.

N/A.   Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 7.    Young's Improper Privacy Objections.

### INTERROGATORY NO. 1:

If YOU contend that any adverse employment actions against YOU were discriminatory then, IDENTIFY each adverse employment action that involved unlawful discrimination, including, for each action:

(a) Each characteristic (for example, gender, race, etc.) on which YOU base YOUR claim or claims of discrimination;

(b) State all facts upon which YOU base each claim of discrimination including, but not necessarily limited to:

    i.    The date, time, and place;

    ii. The name, job title, and detailed description of each agent or employee of Zillow who was involved in any way;

    iii. The detailed facts of each act of each agent or employee of Zillow involved in any way;

    iv. The detailed facts of YOUR response, if any;

    v. The IDENTITY of each person(s) who was a witness to or was involved in any way; and

    vi. The detailed facts of the observations and knowledge of each such witness;

(c) IDENTIFY all DOCUMENTS evidencing those facts.

### RESPONSE TO INTERROGATORY NO. 1:

Responding Party objects to this interrogatory on the ground that it seeks the legal reasoning and theories of Plaintiff's contentions. Plaintiff is not required to prepare the Defendant's case. The interrogatory seeks information protected by the attorney-client privilege and work-product privilege. Moreover, this interrogatory is overbroad as to time and scope, and therefore, is burdensome, harassing and oppressive. This request is also premature in light of the present early stage of discovery and Responding Party expects to

receive information through discovery that will concern and provide information responsive to this interrogatory. Discovery is ongoing and Responding Party reserves the right to amend this response. Additionally, this interrogatory seeks information already available to the requesting party. Plaintiff has already provided the requesting party with this information in Plaintiff's Complaint. Objection is also made on the ground that this interrogatory is compound. Without waiving the foregoing objections, Responding Party states, upon information and belief, the following facts:

## Age Discrimination

(b)

    i.   Plaintiff experienced discrimination with regard to her age on various occasions while employed at Zillow throughout 2014.

    ii.   Kelsey Didier, Manager; Jami Thomas; Manager; and Jon Boller; Head of Sales Operations all engaged in discriminatory conduct.

    iii.   Kelsey Didier and Jami Thomas primarily made comments to Plaintiff about her inability to keep up with younger employees. They often told Plaintiff she could not keep up with the "young new blood," "the new blood is killing it," "are you too old to close?" or that the younger employees were able to perform their job assignments and therefore as a seasoned employee she should too. Kelsey Didier would also count how many restroom breaks Plaintiff took on a given day and would constantly reprimand Plaintiff for taking such breaks. Jon Boller on various occasions told Plaintiff that she could not keep up with the younger employees and that she needed to work faster. These individuals also made comments to Plaintiff such as "do you even know how to work a computer."

    iv.   The comments by Defendant's representatives often caused Plaintiff to break down in tears and she was often told "everyone cries here –we are breaking and building your character." Plaintiff also complained to the individuals referenced herein that she did not like the statements. She told them she was working as hard as she could and that she was number one in sales so she did not understand their comments v. Kelsey Didier, Jon Boller, and Jami Thomas. Contact information for the individuals referenced herein is exclusively in Defendant's possession.

    vi.   Each of the individuals referenced herein observed each other make discriminatory remarks to Plaintiff.

(c) Plaintiff cannot comply with this request because such documents do not exist.

## Disability Discrimination

(b)

i.    During the Period of July 2014 to October 2014 Plaintiff experienced discriminatory conduct from Defendant and/or its representatives.

ii.   Kelsey Didier, Manager; Jon Boller; Head of Sales Operations; Tara Fournier; Human Resources Representative; Jennifer Zumek; Human Resources Director; and Brie Minero; Human Resources Representative.

iii.  On July 7, 2014, Plaintiff was hospitalized in connection with an automobile accident which caused injuries to her neck, back, and shoulders. Plaintiff informed her manager of her injuries. Despite her injuries, Plaintiff continued to work and successfully performed her duties. However, during the period of July 2014 to October 2014, Plaintiff was in constant pain. Plaintiff requested time off for doctor's appointments. Each time Plaintiff had a preapproved doctor's appointment, she was written up for arriving late or missing her talk time hours. On October 9, 2014, Plaintiff emailed Tara Fournier to discuss amongst other things, complaints of her repeated reprimands for taking prior approved time off in connection with her injuries. Plaintiff also requested if reasonable accommodations could be made because she was not "100% yet." That same day, Tara Fournier acknowledged Plaintiff's email but ignored Plaintiff's request for accommodations and Plaintiff's complaints of reprimands. On October 10, 2014, Plaintiff again emailed Tara Fournier to reiterate the effects of the accident on her physical condition and amongst other things to request reasonable accommodations. Plaintiff received no response from Tara Fournier. Additionally, between October 11, 2014 - October 27, 2014, Defendant was aware that Plaintiff was hospitalized and had limited access to her phone. Regardless, Defendant's representatives demanded that Plaintiff, while hospitalized, produce documents evidencing that she was indeed hospitalized and the length of time she would remain hospitalized. Plaintiff complied with their requests, but Defendant's representatives continuously stated they did not receive documents despite representations from Plaintiff and a hospital staff member that such documents were faxed to Defendant. Further, Defendant's representatives stated that they attempted to contact Plaintiff on numerous occasions but could not contact her. Plaintiff on more than one occasion notified Defendant that they could not reach her because they had the incorrect contact information and repeatedly provided them with her phone number. Defendant then stated it could not leave Plaintiff voicemails and ultimately terminated Plaintiff for job abandonment. Furthermore, during this time period, Plaintiff was required to perform in Defendant's "blitz" and "wave" call periods whereby she was required to stand for hours even though she previously complained to Kelsey Didier, her manager, that she could not stand for hours due to her injuries.

iv.   On October 9, 2014, Plaintiff emailed Tara Fournier to discuss amongst other things, complaints of her repeated reprimands for taking prior approved time off work in connection with her injury. Plaintiff also requested if

56

reasonable accommodations could be made for her because she was not "100% yet." On October 10, 2014, Plaintiff again emailed Tara Fournier to reiterate the effects of the accident on her physical condition and amongst other things to request reasonable accommodations. While Plaintiff was hospitalized Plaintiff communicated with Defendant's representatives and notified Defendant's representative that Tim Jaloweic had faxed her hospital records to Defendant. Furthermore, during this time, Defendant told Plaintiff they were unable to reach her. Plaintiff on more than one occasion notified Defendant that they could not reach her because they had the incorrect contact information and repeatedly provided them with her phone number. Further, throughout July 2014 to October 2014, Plaintiff complained to Kelsey Didier, her manager, about the severe pain she was experiencing and requested that she be allowed to sit during the blitz and the wave period. Defendant, nonetheless, required Plaintiff to stand for hours rather than allow her to sit. Plaintiff also complained to Defendant's representatives about her reprimands for taking time off from work and stated that she felt she was not promoted because she took preapproved time off. Plaintiff also sent an email to Jon Boller and Spencer Rascoff on October 27, 2014 notifying them of the issues she was experiencing at Zillow.

v.   Kelsey Didier; Tara Fournier; Jennifer Zumek; Brie Minero; Jon Boller, and Spencer Rascoff. Contact information for the individuals referenced herein is exclusively in Defendant's possession. Susan Newall; and Ian Freeman. In order to preserve third party privacy rights, these parties may be contacted through counsel.

vi.   Each witness referenced herein was aware that Plaintiff was involved in a serious car accident that resulted in her neck, back, and shoulder injuries. Further, Kelsey Didier, Tara Fournier, Jennifer Zumek and Brie Minero were aware that Plaintiff was hospitalized. They were also aware of the facts and circumstances of Plaintiff's termination. Susan Newall and Ian Freeman were aware of Plaintiff's accident, her complaints to Defendant's representatives of her injuries, her requests for accommodations, and Plaintiff's complaints of pain to her manager Kelsey Didier.

(c) Plaintiff will produce documents responsive to this request that are in Plaintiff's custody, control, and possession.

### INTERROGATORY NO. 7:

IDENTIFY and describe in detail all Zillow conduct YOU contend resulted in YOUR suffering of emotional distress, including, but not necessarily limited to:

(a) The date, time, and place of each incident YOU allege resulted in YOUR suffering of emotional distress;

(b) The name, job title, and detailed description of each agent or employee of Zillow who was involved in any way in each instance;

(c) The detailed facts of each act of each agent or employee of Zillow involved in each instance including, but not necessarily limited to, the specific statements or conduct that YOU allege caused YOU emotional distress;

(d) The name and address of each person(s) who was a witness to or was involved in any way in each instance;

(e) The detailed facts of the observations and knowledge of each such witness to each instance; and

(f) YOUR response, if any, to each instance; and

(g) IDENTIFY all DOCUMENTS referring or relating to each identified instance.

## RESPONSE TO INTERROGATORY NO. 7:

Responding Party objects to this interrogatory on the ground that this interrogatory is overbroad as to time and scope, and therefore, is burdensome, harassing and oppressive. Responding Party objects to this interrogatory on the ground that it seeks the legal reasoning and theories of Plaintiff's contentions. Objection is also made on the ground that this interrogatory is compound. Objection is also made on the ground that this interrogatory is cumulative of other interrogatories contained herein. Discovery is ongoing and Responding Party reserves the right to amend this response. Without waiving the foregoing objections, Responding Party states, upon information and belief, the following facts:

(a) Plaintiff experienced emotional distress throughout 2014.

(b) Kelsey Didier; Manager, Jami Thomas; Manager, Jon Boller; Head of Sales Operations; Tara Fournier; Human Resources Representative; and Jennifer Zumek; Human Resources Director.

(c) Kelsey Didier and Jami Thomas primarily made comments to Plaintiff about her inability to keep up with younger employees. They often told Plaintiff she could not keep up with the "young new blood," "the new blood is killing it," "are you too old to close?" or that the younger employees were able to perform their job assignments and therefore as a seasoned employee she should too. Kelsey Didier would also count how many restroom breaks Plaintiff took on a given day and would constantly reprimand Plaintiff for taking such breaks. Jon Boller on a various occasions told Plaintiff that she could not keep up with the younger employees and that she needed to work faster. These individuals also made comments to Plaintiff such as "do you even know how to work a computer."

Furthermore, on July 7, 2014, Plaintiff was hospitalized in connection with an automobile accident which caused injuries to her neck, back, and shoulders. Plaintiff informed her manager of her injuries. Despite her injuries, Plaintiff continued to work and successfully performed her duties. However, during the period of July

58

2014 to October 2014, Plaintiff was in constant pain. Plaintiff requested time off for doctor's appointments. Each time Plaintiff had a preapproved doctor's appointment, she was written up for arriving late or missing her talk time hours. On October 9, 2014, Plaintiff emailed Tara Fournier to discuss amongst other things, complaints of her repeated reprimands for taking prior approved time off work in connection with her injury. Plaintiff also requested if reasonable accommodations could be made for her because she was not "100% yet." That same day, Tara Fournier acknowledged Plaintiff's email but ignored Plaintiff's request for accommodations and Plaintiff's complaints of reprimands.

On October 10, 2014, Plaintiff again emailed Tara Fournier to reiterate the effects of the accident on her physical condition and amongst other things to request reasonable accommodations. Plaintiff received no response from Tara Fournier.   Additionally, during October 11, 2014 - October 27, 2014 Defendant was aware that Plaintiff was hospitalized and had limited access to her phone. Defendant demanded that Plaintiff, while hospitalized, produce documents evidencing that she was indeed hospitalized and the length of time she would be off of work. Plaintiff complied with their requests, but Defendant continuously stated that they did not receive documents despite representations from Plaintiff and hospital staff members that such documents were faxed to Defendant.

Further, Defendant's representative stated that it attempted to contact Plaintiff on numerous occasions but could not contact her. Plaintiff on more than one occasion notified Defendant that they could not reach her because they had the incorrect contact information and repeatedly provided them with her correct phone number. Defendant's representative then stated it could not leave Plaintiff voicemails and ultimately terminated Plaintiff for job abandonment. Furthermore, during this period, Plaintiff was required to perform in Defendant's "blitz" and "wave" call periods whereby she was required to stand for hours even though she previously complained to Kelsey Didier that she could not stand for hours due to her injuries. Defendant's conduct was extreme and outrageous. Accordingly, Defendant authorized its representatives to engage in unlawful conduct, allowing an adult frat house culture where drinking and social politics were rewarded over the talents and skills of individuals.

(d) All employees of Defendant witnessed the adult frat house culture.  Furthermore, Kelsey Didier, Jami Thomas, Tara Fournier, Jennifer Zumek, Brie Minero, and Jon Boller engaged in the wrongful conduct. Contact information for the individuals referenced herein is exclusively in Defendant's possession. Susan Newall and Ian Freeman witnessed the discrimination that Plaintiff experienced by Defendant's representatives. To preserve the privacy right of third parties, these individuals may be contacted through counsel.

(e) Kelsey Didier, Jami Thomas, Tara Fournier, Jennifer Zumek, Jon Boller, and Brie Minero were involved in the conduct giving rise to Plaintiff's claims and observed each other engage in unlawful and inappropriate conduct. Susan Newall and Ian Freeman were aware of the frat like culture and also experienced it; they were aware of Plaintiff's injuries and observed Plaintiff standing for hours during the blitz and wave despite her request for accommodations.

(f) The comments by Defendant's representatives often caused Plaintiff to break down in tears and she was often told "everyone cries here – we are breaking and building your character." Plaintiff also complained to the individuals referenced herein that she did not like the statements. She told them she was working as hard as she could and that she was number one in sales so she did not understand their comments.

Further, on October 9, 2014, Plaintiff emailed Tara Fournier to discuss amongst other things, complaints of her repeated reprimands for taking prior approved time off work in connection with her injury. Plaintiff also requested if reasonable accommodations could be made for her because she was not "100% yet." On October 10, 2014, Plaintiff again emailed Tara Fournier to reiterate the effects of the accident on her physical condition and amongst other things to request reasonable accommodations. While Plaintiff was hospitalized Plaintiff communicated with Defendant's representatives and notified Defendant's representative that Tim Jaloweic had faxed her hospital records to Defendant.

Furthermore, during this time, Defendant told Plaintiff they were unable to reach her. Plaintiff notified Defendant on more than one occasion that the reasons they could not reach her was because Defendant had the incorrect contact information for Plaintiff. Plaintiff repeatedly provided Defendant with her current phone number.

Further, throughout July 2014 to October 2014, Plaintiff complained to Kelsey, her manager, about the severe pain she was experiencing and requested that she be allowed to sit during the blitz and the wave period. Defendant, nonetheless, required Plaintiff to stand for hours rather than allow her to sit. Plaintiff also complained to Defendant's representatives about her reprimands for taking time off from work to treat her injuries and stated that she felt she was not promoted because she took preapproved time off. Plaintiff also sent an email to Jon Boller and Spencer Rascoff on October 27, 2014 notifying him of the issues she was experiencing at Zillow.

(g) Plaintiff will produce documents in her possession, custody, or control that are responsive to this request. Plaintiff will produce emails and text messages.

### a.    Defendant's Argument and Proposed Resolution.

In response to Zillow's Interrogatories 1 and 7, Young contends that "in order to preserve the privacy right of third parties" numerous individuals identified as having relevant knowledge should be contacted through her counsel. Specifically, Young contends that at least the following individuals should be contacted through her counsel: Kelly Cox, Thomas Horton, Kay Hutchins, Trisha Murow, Susan Newall, Brandon Sherman, and Ron Young. As Zillow has explained to Plaintiffs' Counsel, Young's claim that these third parties must be

contacted through her counsel has no basis in the law, unless these individuals are presently represented by them. (Brook Decl. ¶ 7, Ex. 4.) By that same communication, Zillow requested that Plaintiffs' Counsel "immediately respond by clarifying whether any of these individuals are represented by you and in what matters, or provide the requested contact information." (*Id*.) To date, Plaintiffs' Counsel has refused to respond to this request. Zillow respectfully requests that the Court order it to immediately do so.

### b.     Plaintiff's Argument and Proposed Resolution.

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### B.   *Kremer v. Zillow.*

#### 1.     Kremer's and Her Agents' Communications with the Media.

### REQUEST FOR PRODUCTION NO. 36:

Produce all documents relating to any information you have provided to members of the media concerning this lawsuit.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Objection, this request is overly broad, burdensome and harassing as the documents requested are publically available and, thus, equally available to propounding party. Without waiving said objections. Responding Party responds as follows:

Responding Party does not have such documents in its possession.

### a.     Defendant's Argument and Proposed Resolution.

Zillow requested that Kremer produce "all documents relating to any information you have provided to members of the media concerning this lawsuit." Despite haven given interviews, including a front-page article in The New York Times, *see* Jodi Kantor, *Lawsuit's Lurid Details Draw an Online Crowd*, Feb. 22, 2015, at A1, to date, Plaintiff Kremer has refused to produce this information arguing that it is "not in her possession." (Brook Decl. ¶ 28, Ex. 19.) Of course, Kremer has control over any communications she had with the media. What is more, Zillow has a right to discovery into how Kremer described her claims to any

third-party, including members of the media and whether, for example, these explanations differ from the allegations in their complaints. Accordingly, the Court should Kremer to produce this information.

### b. Plaintiff's Argument and Proposed Resolution.

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 2. Kremer's Improper "Possession" Objection.

**REQUEST FOR PRODUCTION NO. 29:**

Produce all documents that relate to any other lawsuit or litigation you initiated wherein you alleged sexual harassment, gender discrimination, and/or intentional or negligent infliction of emotional distress.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Responding Party responds as follows:

Responding Party does not have such documents in its possession.

**REQUEST FOR PRODUCTION NO. 30:**

Produce all documents that relate to any physical relations you voluntarily engaged in with any persons currently or formerly employed at Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Responding Party objects to this request on the ground that this request is vague and ambiguous as to the phrases "physical relations" and "voluntarily engaged in." Objection, this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Objection, this request seeks documents that may be protected from disclosure by Plaintiffs Constitutional Right to Privacy. Without waiving said objections, Responding Party responds as follows:

Responding Party does not have such documents in its possession.

**REQUEST FOR PRODUCTION NO. 34:**

Produce all documents relating to any monetary or other benefits you have received since the termination of your employment with Zillow, including but not limited to unemployment benefits and any wages or income you have received via employment or otherwise.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Responding Party responds as follows:

Responding Party does not have such documents in its possession.

**REQUEST FOR PRODUCTION NO. 35:**

Produce all documents relating to any efforts you have taken to find employment since the termination of your employment with Zillow.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Responding Party objects to this request on the ground that this request is overly broad, burdensome and harassing as it fails to limit itself to any relevant time period or in scope to any issue in this case and, thus exceeds the scope of permissible discovery because it seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Responding Party responds as follows:

Responding Party does not have such documents in its possession.

### a.     Defendant's Argument and Proposed Resolution.

Kremer refuses to produce at least four categories of relevant documents on the ground that the documents are allegedly not in her possession, custody, or control: (1) any other lawsuit or litigation she initiated wherein she alleged claims similar to those alleged here (RFP No. 29); (2) any physical relations she voluntarily engaged in with persons currently or formerly employed at Zillow (RFP No. 30); (3) any monetary or other benefits she received since the termination of her employment with Zillow (RFP No. 34); and (4) all documents relating to any efforts she has taken to find employment since the termination of her employment

with Zillow (RFP No. 35). These documents, however, are plainly in Kremer's possession, custody, or control. *See, e.g.*, *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007) ("Control is defined as the legal right to obtain documents upon demand."); *see also Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted) ("Thus, "[a] party responding to a Rule 34 production request . . . 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'"). For example, Kremer or her attorneys—of which she plainly has control, *see, e.g.*, Handbk. Fed. Civ. Disc. & Disclosure § 9:13 (3d ed.)—has documents responsive to (1) above; Kremer would have text, social media, or email messages responsive to (2) above; and, regarding (3) and (4) above, Kremer presumably has pay stubs or other evidence of any monetary or other benefits she has received since her termination from Zillow, as well as letters, emails, or other correspondence evidencing her efforts—if any—to secure new employment.

In short, Kremer's objection is without merit, and she should be ordered to produce information responsive to these requests.

**b.    Plaintiff's Argument and Proposed Resolution.**

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

**C.    *Johnson v. Zillow* (Johnson, Kerr, Peterson, Seda, & Youseph).**

**1.    Interrogatories Regarding Statute of Limitations.**

Zillow has asserted as an affirmative defense that many of Plaintiffs' claims are barred by the relevant statute of limitations. (Dkt. No. 33 at Affirmative Defense ¶ 10.) Plaintiffs have refused to answer interrogatories regarding the timeliness of their claims, as shown below:

**INTERROGATORY NO. 2 [JOHNSON]:**

If you contend that any of your claims against Zillow is not time-barred, state the legal basis for your contention and state all facts and identify all documents that support your contention.

**RESPONSE TO INTERROGATORY NO. 2 [JOHNSON]**

64

Plaintiff objects to this Request on the grounds that it is vague and ambiguous, compound, and that it calls for a legal conclusion.

**INTERROGATORY NO. 2 [PETERSON]**

If you contend that any of your claims against Zillow is not time-barred, state the legal basis for your contention and state all facts and identify all documents that support your contention.

**RESPONSE TO INTERROGATORY NO. 2 [PETERSON]**

Plaintiff objects to this Request on the ground that it calls for a legal conclusion. Plaintiff further objects to this Interrogatory in that it is compound. Plaintiff is currently unaware of any responsive documents to this Interrogatory.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

**INTERROGATORY NO. 1 [SEDA]**

If you contend that any of your claims against Zillow is not time-barred, state the legal basis for your contention and state all facts and identify all documents that support your contention.

**RESPONSE TO INTERROGATORY NO. 2 [SEDA]**

Plaintiff objects to this Request on the grounds that it is vague and ambiguous, compound, and that it calls for a legal conclusion.

a.    <b>Defendant's Argument and Proposed Resolution.</b>

Plaintiffs Johnson, Peterson, and Seda left Zillow well over one year before filing their lawsuits, which renders their FEHA claims for discrimination, harassment, retaliation, and the like time-barred on their face. *See, e.g.*, *Calove v. Medtronic, Inc.*, 2013 WL 1247666, at *1 (C.D. Cal. Mar. 27, 2013) ("The statute of limitations for claims made under the Fair Employment and Housing Act ('FEHA') is one year.") (citing Cal. Gov. Code § 12965(b)). Mr. Peterson signed a Separation and Release of Claims Agreement stating that his employment with Zillow terminated effective "December 14th, 2012," and yet he did not file his lawsuit until over two years later on December 15, 2014. (Brook Decl. ¶ 47, Ex. 32.) Similarly, Mr. Seda's last day of work at Zillow was in October 2012, and he sent a resignation letter on December 3, 2012, again more than two years before filing this lawsuit. (Brook Decl. ¶ 49, Ex. 34.) Thus, Mr. Peterson and Mr. Seda's

claims for wrongful termination in violation of public policy are time-barred on their face under a two-year statute of limitations. *See, e.g.*, *Prue v. Brady Company/San Diego, Inc.*, 196 Cal. Rptr. 3d 68, 79 (Ct. App. 2015) (applying "a two-year statute of limitations for tort actions based on injuries to plaintiffs caused by the wrongful act or neglect of others" to "common law tort cause of action for wrongful termination in violation of public policy").

Plaintiffs have objected and refuse to answer Zillow's interrogatories seeking the basis for their contention that their claims are timely on the grounds that such interrogatories call for a legal opinion and that the statute of limitations is Zillow's affirmative defense. Neither objection has merit.

*First*, contention interrogatories regarding the application of law to fact are permitted. *See, e.g.*, Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); *EEOC v. U.S. Bakery*, 2003 WL 23538023, at *3 (D. Or. Nov. 20, 2003) (holding contention interrogatory seeking "factual and legal basis" for contentions regarding statute of limitations defense proper).

*Second*, while the statute of limitations may be an affirmative defense, where, as here, the claims are time-barred on their face, the *plaintiff* bears the burden of proving that tolling or some other doctrine nevertheless renders the claim timely. *See, e.g.*, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005) (holding plaintiff seeking "to rely on the discovery rule for delayed accrual of a cause of action" must "show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence") (emphasis in original); *Brown v. Bleiberg*, 32 Cal.3d 426, 438-39 (1982) (holding "the burden of proof would be on plaintiff at trial" to show "concealment which would toll the running of the statute of limitations"); *Baker v. Beech Aircraft Corp.*, 96 Cal. App. 3d 321, 330 (Ct. App. 1979) (holding plaintiff bears the "burden of proof for justifying their late filing" based on "fraudulent concealment of a cause of action").

*Third*, regardless who bears the burden of proof at trial, Plaintiffs are still obligated to respond to the interrogatory. Plaintiffs have cited no law to support the notion that they need not answer interrogatories on issues as to which they do not bear the burden of proof. To the contrary, courts routinely require defendants to answer contention interrogatories regarding their denials. *See, e.g.*, *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, 2014 WL 4961437, at *3 (S.D. Cal. Oct. 3, 2014) (requiring defendant to answer contention interrogatory regarding basis for denial of patent infringement, despite the fact that plaintiff bears the burden of proving patent infringement affirmatively). Thus, even if Zillow bears the burden of proof on its statute of limitations defense, that is no excuse for Plaintiffs' failure to respond to interrogatories on that subject.

The fact that these interrogatories are proper and not objectionable on these grounds is evidenced by the fact that Plaintiffs chose to answer *other* contention interrogatories regarding the affirmative defense of release. Zillow has alleged as an affirmative defense and counterclaim that Plaintiffs Johnson, Peterson, and Youseph's claims are barred by the doctrine of release because they signed Separation and Release Agreements upon their departure from Zillow. (Brook Decl. ¶ 48, Ex. 33.) Zillow served interrogatories asking Plaintiffs to state the complete factual and legal basis for any contention that such Release Agreements do not bar their claims. (*Id.*) Unlike with respect to the statute of limitations interrogatories, Plaintiffs *answered* the Release interrogatories. (*Id.*) There is no principled basis for Plaintiffs to pick and choose which contention interrogatories, on which affirmative defenses, they wish to answer.

The Court should compel Plaintiffs Johnson, Peterson, and Seda to answer the contention interrogatories regarding the timeliness of their claims.

### b.   Plaintiffs' Argument and Proposed Resolution.

Plaintiffs have objected and will reiterate their objections here that such interrogatories call for a legal opinion and/or conclusion.  Moreover, any and all facts related to these Plaintiffs' alleged statute of limitations bar are delineated in

the respective complaints.  Finally, if Defendant believed that there was a statute of limitations defense, they should have so asserted at the initial pleading stage and brought a motion to dismiss or motion to strike as it is Defendant's affirmative defense and their duty to prove. No motion was set forth. Accordingly, no further response from Plaintiffs is warranted at this time.

### 2. Plaintiffs' Failure to Respond to Damages Interrogatories.

The *Johnson* Plaintiffs have all objected and refused to respond to identical interrogatories on damages, as shown below:

### INTERROGATORY NO. 20 [JOHNSON]:

State with specificity the amount of damages, penalties, restitution, or any other monetary recovery you are seeking from Defendant, broken down by category of damages *(i.e.,* lost future earnings, emotional distress, etc.), describe your method of computing each category of damages, and state the complete factual basis supporting said amount(s).

### RESPONSE TO INTERROGATORY NO. 20 [JOHNSON]:

Plaintiff objects to this Request to the extent that it contains impermissible subparts, is conjunctive/disjunctive and is premature. Plaintiff objects on the ground that this Interrogatory implicates Plaintiffs theory of the case/recovery, which is non-discoverable information. Plaintiff further objects to this Interrogatory in that it is compound, and to the extent that it calls for a legal conclusion, attorney work-product, and calls for premature expert opinion.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

### INTERROGATORY NO. 16 [KERR]:

State with specificity the amount of damages, penalties, restitution, or any other monetary recovery you are seeking from Defendant, broken down by category of damages *(i.e.,* lost future earnings, emotional distress, etc.), describe your method of computing each category of damages, and state the complete factual basis supporting said amount(s).

### RESPONSE TO INTERROGATORY NO. 16 [KERR]:

Plaintiff objects to this Request to the extent that it contains impermissible subparts, is conjunctive/disjunctive and is premature. Plaintiff objects on the ground that this Interrogatory implicates Plaintiffs theory of the case/recovery, which is non-discoverable information. Plaintiff further objects to this Interrogatory in that it is compound, and to the extent that it calls for a legal conclusion, attorney work-product, and calls for premature expert opinion.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 17 [SEDA]:

State with specificity the amount of damages, penalties, restitution, or any other monetary recovery you are seeking from Defendant, broken down by category of damages *(i.e.,* lost future earnings, emotional distress, etc.), describe your method of computing each category of damages, and state the complete factual basis supporting said amount(s).

## RESPONSE TO INTERROGATORY NO. 17 [SEDA];

Plaintiff objects to this Request to the extent that it contains impermissible subparts, is conjunctive/disjunctive and is premature. Plaintiff objects on the ground that this Interrogatory implicates Plaintiffs theory of the case/recovery, which is non-discoverable information. Plaintiff further objects to this Interrogatory in that it is compound, and to the extent that it calls for a legal conclusion, attorney work-product, and calls for premature expert opinion.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 15 [YOUSEPH]:

State with specificity the amount of damages, penalties, restitution, or any other monetary recovery you are seeking from Defendant, broken down by category of damages *(i.e.,* lost future earnings, emotional distress, etc.), describe your method of computing each category of damages, and state the complete factual basis supporting said amount(s).

## RESPONSE TO INTERROGATORY NO. 15 [YOUSEPH]:

Plaintiff objects to this Request to the extent that it contains impermissible subparts, is conjunctive/disjunctive and is premature. Plaintiff objects on the ground that this Interrogatory implicates Plaintiffs theory of the case/recovery, which is non-discoverable information. Plaintiff further objects to this Interrogatory in that it is compound, and to the extent that it calls for a legal conclusion, attorney work-product, and calls for premature expert opinion.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

### a.    Defendant's Argument and Proposed Resolution.

This Court has already rejected Plaintiffs' argument that they are entitled to withhold relevant damages discovery because the expert report deadline has not arrived. (Dkt. No. 42 at 4 (July 28, 2015 Order re Zillow's Mots. to Compel).) We are now just a few months away from the close of fact discovery and the deadline

for initial expert reports and the *Johnson* Plaintiffs *still* refuse to provide any meaningful discovery with respect to their damages claims that exceed $50 million in the aggregate. Although Plaintiffs' may ultimately rely "on the opinions of expert witnesses, this does not justify [them] in not providing any information regarding [their] alleged damages," as "[e]ven without being served with an interrogatory, a plaintiff is required . . . to provide a computation of each category of damages it seeks," which "should provide sufficient detail, based on the information presently available to the plaintiff, to enable the defendant to understand the contours of his potential exposure and make informed decisions regarding settlement and discovery." *Switch Comm's Grp. v. Ballard*, 2011 WL 3957434, at *9 (D. Nev. Sep. 7, 2011). This court has recognized as much. (Dkt. No. 42 at 4 (Order re Zillow's Mots. to Compel).)

Plaintiffs have offered in the meet-and-confer process to simply cut-and-paste their deficient initial disclosures into their interrogatory responses. That will not cure the problem. This Court previously ordered Plaintiffs to "supplement their initial disclosures and provide a detailed specification of how damages related to lost earnings, past and future lost earnings, and past and future medical expenses were calculated." *Id.* Plaintiffs supplemented their initial disclosures, but their supplementation simply stated the amounts of their lost earnings and the general amount of time over which they were calculated, without accounting for whether (1) plaintiffs had obtained alternate employment, (2) if so, what their earnings were in connection with the alternative employment, and (3) how such earnings would mitigate or offset their alleged lost earnings. (Brook Decl. ¶ 22, Exs. 12–15.) Plaintiffs have not provided anything like the "detailed specification" the Court ordered. Nor have Plaintiffs offered *any* calculation of their "past and future medical expenses." In any event, Plaintiffs supplemented their initial disclosures in August 2015. We are now approaching February 2016. The amount of specificity required at this stage of the proceedings is greater than it was at the outset, "in light

4060607v1/014549

1   of the information currently available" to Plaintiffs, such as subsequent

2   employment and medical costs (if any). (Dkt. No. 42 at at 3.)

3         The Court should compel Plaintiffs to answer the damages interrogatories

4   with detail, or else forfeit their right to seek damages at trial. Zillow should not be

5   left to guess what amount of damages Plaintiffs will seek, on which theories, and

6   how such amounts were computed. Nor should Zillow be forced to wait to learn of

7   Plaintiff's damages theory, computation, and evidence until they serve expert

8   reports *after* the fact-discovery cut-off has already passed. (Dkt. No. 36 (June 23,

9   2015 Order Granting Stipulation Re Fact & Expert Discovery (providing April 1,

10  2016 fact discovery cut-off and April 8, 2016 deadline for initial expert reports)).)

11  **b.**    **Plaintiffs' Argument and Proposed Resolution.**

12        Plaintiffs Johnson, Kerr, Petersen, Seda and Youseph have agreed to

13  supplement their responses by including the information in the initial disclosures.

14  They have also produced or have signed authorizations for medical records and

15  billing as to the past and current medical damages. Future medical damages are

16  being calculated by expert witnesses.  All detailed informaiton regarding damages

17  will be introduced through expert witnesse.  There is no mystery as to what each

18  plaintiff is claiming – past and future medical expenses and lost wages as well as

19  non-economic damages for their respective pain and suffering.  This is not a matter

20  of being surprised at trial.  Moreover, the expert witnesses will be well apprised of

21  such information at the time of expert witness depositions.  Accordingly, no further

22  information is warranted at this time.

23  **3.**    <u>**Plaintiffs' Improper Incorporation by Reference.**</u>

24       Plaintiffs have responded to 41 interrogatories by stating, at least in part, that

25  they "incorporate by reference" their responses to specific, previous interrogatories

26  "to the extent relevant." These include Johnson's responses to Interrogatory Nos. 6-

27  13, Kerr's responses to Interrogatory Nos. 6-10, Peterson's responses to

28  Interrogatory Nos. 4-14, Seda's responses to Interrogatory Nos. 3-10, and

Youseph's responses to Interrogatory Nos. 2-7, 10, and 13-14. Zillow reproduces an exemplary interrogatory for each Plaintiff below:

## INTERROGATORY NO. 12 [JOHNSON]:

If you contend that Zillow retaliated against you for engaging in any protected activity, please state as to each act of retaliation (a) the detailed facts regarding the protected activity you engaged in, including the date, time, and place of each act you allege constituted protected activity and the name of each agent or employee of Zillow who was involved in any way in each such act of protected activity by you; (b) the detailed facts of each subsequent act of alleged retaliation by Zillow, including the date, time, and place of each act you allege constituted retaliation and the name of each agent or employee of Zillow who was involved in any way in each such act of alleged retaliation; and (c) the name, address, and detailed facts of the observations and knowledge of each person who was a witness to or was involved in any act of protected activity by you or any act of alleged retaliation by Zillow.

## RESPONSE TO INTERROGATORY NO. 12 [JOHNSON]:

Plaintiff objects to this Request to the extent that it is vague and ambiguous, duplicative, contains impermissible subparts and is conjunctive/disjunctive. Plaintiff objects to this Interrogatory in that it is compound and calls for a legal conclusion.

Subject to the foregoing, and the General Responses and Objections, Plaintiff responds as follows: To the extent relevant, Plaintiff incorporates his Responses to Interrogatories No. 1-11 and 13-20. Specifically, Plaintiff incorporates his Responses to Interrogatories Nos. 3, 4, 6, 7, 8, 9 and 13 herein as responsive to this interrogatory. Plaintiff cannot identify any specific documents responsive to this Interrogatory at this time other than those already identified in Plaintiff's prior responses and/or those denoted as within the exclusive possession, custody, and control of Zillow.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 7 [KERR]:

If you contend that Zillow discriminated against you on the basis of a qualified disability, including but not limited to by failing to accommodate any qualified disability or by failing to engage in the interactive process concerning any requested accommodation, please state as to each act of discrimination (a) the date, time, and place of each such act; (b) the name, job title, and a detailed description of each agent or employee of Zillow who was involved in any way in each such act; (c) the detailed facts of each such act of each such agent or employee of Zillow; (d) the name and address of each person who was a witness to or was involved in any way in each such act; and (e) the detailed facts of the observations and knowledge of each such witness to each such act.

## RESPONSE TO INTERROGATORY NO. 7 [KERR]:

72

Plaintiff objects to this Request to the extent that it is compound, contains impermissible subparts, is duplicative and is conjunctive/disjunctive. Plaintiff further objects to this Interrogatory to the extent that it calls for a legal conclusion, violates Plaintiff's privacy rights and calls for premature expert opinion.

Subject to the foregoing, and the General Responses and Objections, Plaintiff responds as follows: Plaintiff expressly incorporates by reference his Responses to Interrogatories Nos. 1, 2, 5, and 6 as set forth herein and as relevant.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 7 [PETERSON]:

State all facts and identify all documents that support your contention that "Mr. Peterson was continually denied incoming sales calls until he was finally terminated because he did not have enough sales and was generally 'not a good fit for Zillow,'" as alleged in Paragraph 39 of your First Amended Complaint.

## RESPONSE TO INTERROGATORY NO. 7 [PETERSON]:

Plaintiff objects to this Request to the extent that it is duplicative, contains impermissible subparts and is conjunctive/disjunctive. Plaintiff further objects to this Interrogatory in that it is compound, calls for speculation and a legal conclusion.

Subject to the foregoing, and the General Responses and Objections, Plaintiff responds as follows: To the extent relevant, Plaintiff incorporates his Response to Interrogatories No. 3, 4, 5, and 6. Defendant intentionally withheld and/or sabotaged Plaintiff's efforts in securing inbound sales calls and leads, which Defendant knew to be the critical source of Plaintiff reaching his monthly sales quota set by Defendant, which in turn, directly implicated Plaintiff's ability to maintain his employment.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 3 [SEDA]:

State all facts, identify all persons with knowledge of, and identify all documents that relate to your contention that you were constructively discharged from Zillow in violation of public policy.

## RESPONSE TO INTERROGATORY NO. 3 [SEDA]:

Plaintiff objects to this Request to the extent that it is vague and ambiguous, is compound, contains impermissible subparts and is conjunctive/disjunctive. Plaintiff further objects to this Interrogatory on the grounds that it calls for a legal conclusion and may call for a premature expert opinion.

Subject to the foregoing, and the General Responses and Objections, Plaintiff responds as follows: Plaintiff expressly incorporates his Responses to Interrogatories No. 1-2 and 4-17 herein as relevant to this Interrogatory. Plaintiff avers that on October 16, 2012, Ms. Enyeart called Plaintiff into her office to discuss Plaintiff's use of a religious moniker ("God Over Money") as his Sales Icon. Plaintiff avers that Ms. Enyeart reprimanded him and informed him that Plaintiff's religious moniker "was inappropriate in a corporate setting" and "had no place at Zillow because [Zillow] wants to keep things politically correct." Ms. Enyeart went on to further inform Plaintiff that Zillow "needs to make sure that there is nothing up— religious or political—so that Zillow can remain a 'PC' environment." Plaintiff avers that the next day, on October 17, 2012, he was placed on a temporary medical leave after being deemed by Dr. Pierson to be "totally incapacitated" due to illness. Plaintiff avers that on December 3, 2012, he emailed Ms. Enyeart to inform her that he was resigning from Zillow effective immediately. Plaintiff avers that he subsequently received a receipt of his resignation from Ms. Enyeart later that day. Plaintiff avers that after being placed on temporary medical leave on October 17, 2012, and after reflecting on scripture from the Bible as well as the discriminatory treatment (both religious and racial as herein described) that Plaintiff endured over the course of his employment at Zillow, Plaintiff decided that he could not return to Zillow's workplace environment. Plaintiff indicates the following individuals who may have knowledge of Plaintiff's constructive discharge from Zillow: Plaintiff, Ms. Enyeart, Jon Boller, Edward Cornelius, Cody Fagnant, Jason Stahl, Bernadette Carr, Rick Sanchez, Stephen Johnson, Reginald Peterson, Nicop Walters and Rachel Kremer. Plaintiff cannot identify any specific documents that are responsive to this Interrogatory at this time as most of the events and communications in support of Plaintiff's contention that he was constructively terminated were oral and/or percipiently experienced.

Discovery is ongoing and Plaintiff reserves his right to amend his response.

## INTERROGATORY NO. 13 [YOUSEPH]:

Please state and describe in detail all of your efforts to secure employment from the date you first learned of the likelihood that you would be discharged from Zillow.

## RESPONSE TO INTERROGATORY NO. 13 [YOUSEPH]:

Plaintiff objects to this Request to the extent that it is vague and ambiguous, is conjunctive/disjunctive and violates the privacy protections afforded Plaintiff under the California Constitution.

Subject to the foregoing, and the General Responses and Objections, Plaintiff responds as follows: Plaintiff incorporates his Responses to Interrogatory Nos. 1-12 and 14-15 where relevant. Up until May 22, 2014, Plaintiff had no idea that Zillow had intended to fire him until he was brought upstairs and pretextually terminated for "insubordination." Plaintiff avers that because he had no idea that he was being terminated, he had not begun searching for alternative employment until after he had been terminated on May 22, 2014. Plaintiff avers that once Zillow had terminated him, he began

74

1    searching online and making phone calls nearly every day for months
     while looking for new jobs that paid about the same amount he had
2    received at Zillow. Plaintiff went on about five (5) interviews prior to
     accepting a position with Crunch Fitness in Chino, California on or
3    about September 2014. Plaintiff avers that he collected unemployment
     benefits (about $1800 a month) for roughly four months until he
4    began working at Crunch Fitness on or about September 2014.

5            Discovery is ongoing and Plaintiff reserves his right to amend
     his response.

6
                    a.      **Defendant's Argument and Proposed Resolution.**
7
          In response to numerous interrogatories, all of the *Johnson* plaintiffs state
8
     that they have "incorporated" by reference their responses to *other* interrogatories
9
     "to the extent relevant." This is improper. "Each interrogatory must, to the extent it
10
     is not objected to, be answered separately and fully in writing under oath." Fed. R.
11
     Civ. P. 33(b)(3). "Incorporation by reference is not a responsive answer." *Logtale,*
12
     *Ltd. v. IKOR, Inc.*, 2013 WL 3967750, at *3 (N.D. Cal. July 31, 2013) (quotation
13
     marks and citation omitted)). Instead, "an answer to an interrogatory must be
14
     responsive to the question," should "be complete in itself," and "should not refer to
15
     . . . other interrogatories, at least where such reference *makes it impossible to*
16
     *determine whether an adequate answer has been given . . . .*" *Id.* (quotation marks
17
     omitted) (citing cases) (emphasis added). That is precisely the case here. Zillow has
18
     no way of knowing which portions of the other interrogatory responses Plaintiffs
19
     believe are "relevant" and thus has no idea which portions are incorporated by
20
     reference and which are not. At trial, were Zillow to cross-examine any of the
21
     Plaintiffs concerning their interrogatory responses, they would be free to say that
22
     whatever portions of the prior interrogatory responses were the ones they meant to
23
     incorporate, while disclaiming any others that hurt their argument. Rule 33(b)(3) is
24
     designed to avoid this dilemma by ensuring that there is no question as to what is
25
     included in the response to each interrogatory.

26        The Court should compel Plaintiffs to amend their interrogatory responses to
27   eliminate any "incorporation by reference," and instead to answer each completely
28   "in itself."

4060607v1/014549

b.      **Plaintiffs' Argument and Proposed Resolution.**

One quick look at the Plaintiffs' discovery responses will show how incredibly detailed and explanatory each response is.  In fact, each response indicated above was responsive specifically to that interrogatory.  However, in an abundance of caution, Plaintiffs simply referenced other responses because many of the interrogatories and their responses necessarily overlap and Plaintiffs did not want to limit themselves or exclude some piece of relevant information.  Therefore, the reference to other responses was made, not to evade making a response to the particular interrogatory but to ensure that each response is full and complete.

D.   *Boehler v. Zillow* **(Boehler & Friedrich).**

1.      **Boehler's Medical Treatment Documents.**

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents that relate to your claim that, as a result of Zillow's alleged conduct, you have suffered and continue to severe emotional distress, including, but not necessarily limited to, debilitating depression, anxiety, exhaustion, and insomnia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege. Discovery is ongoing and Responding Party specifically reserves the right to amend this answer. Objection. Responding Party shall produce responsive, non-privileged documents in his possession, custody or control.  At this time, Responding Party is not withholding any documents on the basis of his objections. Responding Party's search for responsive documents is ongoing and Responding Party shall produce responsive documents on a rolling basis as they may be discovered.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all medical records related to your claim that you have suffered and continue to suffer from severe emotional distress.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection. This request seeks information that is protected by Responding Party's privacy rights, the work product doctrine, and/or the attorney-client privilege.  Discovery is ongoing and Responding Party specifically reserves the right to amend this answer.

**REQUEST FOR PRODUCTION NO. 33:**

76

Produce all documents, including medical records, demonstrating the quality of and change in your health from the period before September 2014 to the period after September 2014, as alleged in paragraph 44 of the Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Objection. This request is overly broad and burdensome as the majority of the documents responsive to this request are not only equally available to Propounding Party, but are to some extent exclusively available to Propounding Party to the exclusion of Responding Party. Objection. This request is also overly broad and burdensome as it seeks documents not relevant to any issue in this case nor reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objection, and to the extent that such documents exist and are in Responding Party's possession, control, or custody, Responding Party produces no documents.

### a.    Defendant's Argument and Proposed Resolution.

Boehler has put his own physical and emotional health at issue by alleging Zillow caused him to suffer severe emotional distress, and seeking tens of millions of dollars in damages as a result. *See Dornell v. City of San Mateo*, 2013 WL 5443036 at*34 (N.D. Cal. Sept. 30, 2013) (requiring production of plaintiff s psychological records where plaintiff had put her mental health at issue by alleging defendant caused her "severe emotional distress" that continues to affect her). But to date, Boehler has not produced a single document to Zillow regarding his alleged medical condition. His objections to Zillow's Requests for Production are plainly baseless. Under Rule 26(b) of the Federal Rules of Civil Procedure, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Zillow's requests for Boehler's medical records are proportional. They are limited to medical information that directly speak to Boehler's alleged emotional distress, including anxiety, which Boehler has specifically alleged having, and confirmed being treated for in his Interrogatory responses. Zillow has a right to know the extent and nature of the treatment, including how Boehler represented his alleged condition to his treating doctors and on what basis they diagnosed him.

Boehler should be required to obtain and produce all medical records demonstrating his alleged emotional distress, as well as medical records—including from before his employment at Zillow—that bear on his claims. Therefore, for example, based on Boehler's admission that he was diagnosed with ADD and prescribed Adderal in 2000—the same drug he has been prescribed to cope with his alleged emotional distress—Boehler should be required obtain and produce all such documents showing the diagnosis, reasons for it, and treatment of it.

### b. Plaintiff's Argument and Proposed Resolution.

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 2. Boehler's Medical Treatment Interrogatories.

### INTERROGATORY NO. 10:

If, prior to your employment at Zillow, you had undergone or received any treatment for any mental or emotional disturbance, please state:

(a) The date, time and place of any treatment;

(b) The detailed facts of the nature and extent of any treatment;

(c) The names and addresses of each doctor, psychiatrist, psychologist, practitioner, hospital, clinic, or institution treating you;

(d) The detailed facts concerning all diagnoses made concerning any such condition, giving the date of each;

(e) The detailed facts concerning all prognoses made concerning any such condition, giving the date of each;

(f) The cost of any such treatment; and

(g) IDENTIFY all DOCUMENTS referring or relating to any treatment.

### RESPONSE TO INTERROGATORY NO. 10:

Responding Party underwent a test for Attention Deficit Disorder in Columbia, South Carolina in or about 2000. The test was administered by a specialist whose identity is unknown to Responding Party. Responding Party was diagnosed with Attention Deficit Disorder and was prescribed Adderall, which he took for approximately three to five years before stopping.

4060607v1/014549

### a.    Defendant's Argument and Proposed Resolution.

Boehler's objections to this Interrogatory exemplify the circularity of his discovery responses. In his responses to Zillow's Requests for Production, Boehler refuses to produce documents related to his claims of emotional distress. And in his Interrogatory Responses, Boehler refuses to provide Zillow complete information regarding who previously treated him for the exact same symptoms of emotional distress Boehler now alleges were caused by Zillow's conduct, so that at the very least, Zillow can obtain such records through third-party subpoenas. The fact that Boehler was previously treated for ADD is relevant to Zillow's potential defense that Boehler's claimed emotional distress is, in fact, the manifestation of a pre-existing condition. Moreover, Boehler plainly must have access to the names of the doctors who, for 3-5 years prior to his employment at Zillow, treated and wrote him prescriptions for Adderall, the same drug which he has recently been re-prescribed. Boehler should be ordered to produce the names of his treating doctors, and moreover, the medical records related to his visits with them.

### b.    Plaintiff's Argument and Proposed Resolution.

N/A.   Plaintiffs failed to provide their portion of the   Joint Stipulation in violation of the Court's January 7, 2016 Orders.

### 3.    Boehler's Improper Legal Opinion Objection.

**INTERROGATORY NO. 11:**

If you contend that you refused to participate in any allegedly illegal conduct at Zillow, IDENTIFY all facts and describe in detail (a) how you participated in the conduct prior to learning of it, and (b) how you —refused to participate further upon learning of the scheme and alleged RESPA violations, as alleged in paragraphs 72 and 73 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 11:**

Objection. This interrogatory calls for legal opinion from a lay person.

### a.    Defendant's Argument and Proposed Resolution.

Federal Rule of Civil Procedure 33 makes clear that Boehler's objection is not permissible. See Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable

merely because it asks for an opinion or contention that relates to fact or the application of law to fact."). In any event, this interrogatory does not ask Boehler to provide a legal opinion: he alleged in his complaint that he "refused to participate" in allegedly illegal conduct, and he should be ordered to identify the manner in which he participated in that allegedly illegal activity before learning of it, and how he refused to participate in such illegal activity upon learning of it, or he should be precluded from seeking any damages for this alleged theory of liability.

### b. Plaintiff's Argument and Proposed Resolution.

N/A.  Plaintiffs failed to provide their portion of the  Joint Stipulation in violation of the Court's January 7, 2016 Orders.

## IV. DEFENDANT'S CONCLUSION

Despite claiming over $150 million in damages, and despite the fact that we are now just over two months away from the close of fact discovery, Plaintiffs have failed to produce documents or answer interrogatories that go to the heart of their claims. Zillow therefore respectfully requests that the Court grant Zillow's motion to compel and order Plaintiffs to produce responsive documents and answer fully Zillow's interrogatories, as set forth above.

\\\

\\\

\\\

80

4060607v1/014549

1    **V.**    **PLAINTIFFS' CONCLUSION**

2      Plaintiffs have conducted full and complete searches for all documents

3 requested and have produced any and all responsive documents within their

4 possession, custody and/or control.  Moreover, Plaintiffs have adequately provided

5 full and complete responses to all interrogatories asked at this time. Plaintiffs

6 request that this Court deny Zillow's motion to compel and allow the parties to rest

7 on the discovery responses already served.

8

9   Dated: January 21, 2015       BROOKE A. M. TAYLOR

10                              STEVEN G. SKLAVER

AMANDA BONN

11                              DAVIDA BROOK

RAVI DOSHI

12                              SUSMAN GODFREY L.L.P.

13                              By: _/s/ Davida Brook_____

14                              Attorneys for Defendant Zillow, Inc.

15   Dated: January 21, 2015       MARK J. GERAGOS

16                              BEN J. MEISELAS

17                              GERAGOS & GERAGOS

18                              BOBBY SAMINI

19                              MATTHEW M. HOESLY

LAURA BOOTH

20                              SAMINI SCHEINBERG, PC

21

22                              By: _/s/ Laura Booth_____

23                              Attorneys for Plaintiffs

24

25

26

27

28

4060607v1/014549